[Cite as *In re L.R.*, 2013-Ohio-3104.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF: L.R., M.R.

:     JUDGES:
:     Hon. W. Scott Gwin, P.J.
:     Hon. William B. Hoffman, J.
:     Hon. John W. Wise, J.
:
:
:
:     Case No. 13CA004
:
:
:
:     O P I N I O N

CHARACTER OF PROCEEDING:     Civil appeal from the Holmes County Court
                             of Common Pleas, Juvenile Division, Case
                             Nos. 10-N-115, 10-N-116

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      July 15, 2013

APPEARANCES:

For - Appellee                          For - Appellant

STEPHEN KNOWLING
SEAN WARNER                             CLARKE W. OWENS
Holmes County Prosecuting Attorney      132 S. Market Street, Suite 204
164 E. Jackson Street                   Wooster, OH 44691
Millersburg, OH 44654

                                        GUARDIAN AD LITEM
                                        DAVID M. HUNTER
                                        244 W. Main Street
                                        Loudonville, OH 44842

*Gwin, P.J.*

**{¶1}** Appellant-father, Leonard Rice ["Father"] appeals the March 1, 2013, judgment entry of the Holmes County Court of Common Pleas, Juvenile Court Division, which terminated his parental rights with respect to his minor children J.R. and M.R. and granted permanent custody of the children to appellee, Holmes County Department of Jobs and Family Services ("HCDJFS").

## *PROCEDURAL HISTORY*

**{¶2}** On May 21, 2010, HCDJFS filed a Complaint in Neglect, Abuse, and Dependency for the two children, J.R. (03/01/1998) and M.R (01/11/2001). On July 7, 2010, the parties stipulated to a finding of Neglect under R.C. 2151.03(A)(3) and Dependency under R.C. 2151.04(C), and the other sections were dismissed. Protective supervision was ordered as of July 12, 2010, with case plan at disposition.

**{¶3}** Melissa Fugett, former intake and ongoing worker with HCDJFS testified that she requested and received temporary custody of the children in August 2010 due to the parents' failure to begin services and failure to submit to drug screens. Both children remain in the agency's custody. Ms. Fugett, testified that Father does have a prescription for oxycodone,

**{¶4}** A hearing was held August 30, 2010 to review the grant of custody and served as an initial hearing on HCDJFS' motion for contempt against both parents. Both the grant of custody and the motion for contempt were based in part on the parents' refusal to submit to drug screens when requested by the agency. A second contempt motion was filed against Father in May 2011 for failure to submit to drug screens and failing to attend the individual counseling required by the case plan. At the time she filed

the second contempt motion, Ms. Fugett said Father "wasn't doing drug screens, he wasn't attending visitation regularly, he wasn't, uh, seeing a counselor. He wasn't doing anything..." (T.22).

{¶5} Ms. Fugett stated that Leonard attended counseling and failed to submit to drug screens sporadically throughout the case. When Leonard did submit to drug screens he tested positive for marijuana and admitted to Ms. Fugett that he used marijuana and that he should stop. Both parents had moved from house to house during the pendency of the case. At one point, Father was incarcerated for failure to pay child support.

{¶6} Ms. Fugett was asked about visits by the parents with the children. She testified the supervised visits were "inconsistent" with lots of no-shows. She said that sometimes the parents did well but sometimes the parents were "out of it" which was evidenced by them falling asleep and slurring their words. She also testified the children noticed this behavior by their parents and were upset by it. She stated the visits were initially one-hour visits twice every week but transportation problems resulted in a change to a single visit of one and one-half hours per week. She stated the parents rarely used the entire ninety minutes. She did state that the majority of the visits by the parents at HCDJFS offices were positive visits.

{¶7} Mr. Klinger of HCDJFS testified he supervised approximately 116 visits by the parents with their children. Mr. Klingler said, "for the most part visits by [Father] have gone well." However, he noted Father fell asleep approximately five times during visits and the last of those was at least one year before the hearing date. He also stated that on one occasion, Father was slurring his speech and appeared to be under the

influence and that incident was at least one year before the hearing date. Mr. Klingler stated one of the biggest problems in the visits was Father's discussion of these cases with the children. Mr. Klingler said he had to warn Father about this problem "a number of times." Mr. Klinger further testified Father was adamant that he would not lose permanent custody of his children.

{¶8}    Ms. Fugett left HCDJFS in August 2012. Ms. Fugett characterized both parents as lacking motivation to change during the entire time she was the ongoing caseworker for the children (T. 8-10). She testified to numerous occasions in which both parents did not comply with the case plan requirements or failed to follow the rules of unsupervised visitation leading to the termination of such visits after only a brief period.

{¶9}    Kati Vaughn, current intake worker for HCDJFS stated she assisted current ongoing worker, Luella Gilbert on occasion. Ms. Vaughn stated that she administered a drug screen to Father on November 7, 2012 (T. 57). She indicated that the screen was requested due to concerns with Father's condition at a supervised visit with his children that day or the day prior to the request.

{¶10} Joe Messner counseled Father sporadically from September 2010 until April 2012. There were 12 appointments in 19 months with 14 cancellations. (T. 89). Mr. Messner testified that Father was unable to sustain long periods of motivation and that Father's level of motivation was externally, as opposed to internally, driven which appeared to be tied to his case plan (T. 92). Father cancelled his last appointment with Mr. Messner on April 10, 2012 and indicated he would not return stating Father felt the counseling "had done as much good as it was going to do." (T. 93).

{¶11} Jackie Taylor testified that she is a caseworker for the Holmes County Child Support Enforcement Agency (T. 130). She stated that Father has only made one payment during the pendency of his case and has been incarcerated for failure to pay his obligations (T. 133).

{¶12} Roger Estill, Chief Probation Officer for Holmes County Common Pleas Court, testified that the children's mother has been incarcerated for several different drug charges during the last two and a half years (T. 164). Her most recent incarceration from August to December of 2012 was the result of a probation violation which mother admitted to theft of Father's oxycodone.

{¶13} Bridget Lemberg, lab director of Forensic Fluids, testified that Father tested positive for cocaine from the test administered by Kati Vaughn on November 7, 2012 (T. 228). Father's positive test result was admitted as State's Exhibit A.

{¶14} Luella Gilbert is the current ongoing HCDJFS caseworker assigned to the children. Ms. Gilbert testified that she began working on the case in August 2012 (T. 255). She indicated that she was unaware of any employment by Father from that point to the present (T. 274). She indicated that Father's home was adequate until Mother was released from prison in early December. Since that time, the condition of the home has deteriorated (T. 281-283). Ms. Gilbert indicated both Father and Mother have refused drug screens in December and January. (T. 271).

{¶15} Ms. Gilbert was aware that Father had re-engaged in counseling with Scott Self in October 2012. Ms. Gilbert testified Father told her he had signed back up "due to his attorney telling him that is what he needed to do to help him with his court case." (T. 276). In spite of his counseling, Father still refused to take drug screens after

November 20, 2012. Ms. Gilbert testified she was present at Father's home on November 7, 2012 when Kati Vaughn administered a drug screen to Father. During this meeting, Father mentioned that J.R. requested to extend visitation to two hours. Ms. Gilbert asked Father if he wished the visits to be extended. Father stated he did not know if he could sit in the small visitation room at the agency for two hours. Ms. Gilbert told Father that it was still time he would be able to spend with his children and that Ms. Gilbert would request an additional hour be added if Father would commit to coming for that duration. Father would not commit to coming for two hours to visit his children (T. 277-278). Ms. Gilbert also noted that on the last supervised visit on the Friday prior to the hearing, Father's speech was slurred and he appeared "out of it" prompting Ms. Gilbert to inquire multiple times if he was all right (T. 279).

{¶16} Scott Self confirmed that Father had begun counseling in November of 2012 and that Father was currently in stage three of five stages of change. Father has not begun any action phase of the stages of change and currently in the planning stage (T. 108). He further testified Father needs some type of support going forward but was unable to specify what type of support because Father had not completed the exit interview as of the date of the evidentiary hearing. He indicated Father was diagnosed with Alcohol Dependency; a condition he said is more serious than Alcohol Abuse. He stated relapses for someone like Father are very common and occur more often than not.

{¶17} Ken Klingler testified that Father and Mother's visits went well with the children when the parents did attend (T. 140). Mother's incarceration precluded her from attending during large stretches (T. 144). Father would regularly miss visits and would

leave visits early due to transportation problems (T. 147). Father had to be warned repeatedly not to discuss the case with his children (T. 153).

{¶18} Mark Leinbach testified about his work in counseling with J.R. He worked with J.R. for about six months after HCDJFS became involved. He stated that J.R. made significant progress and Mr. Leinbach determined further counseling was not needed. He stated J.R. made progress in dealing with the transition from home to foster care and his problem behaviors at school decreased.

{¶19} Patricia Tabereaux also testified about the progress of J.R. and M.R. She testified they are both "doing great in foster care." She said both kids are involved in a snowboarding club and J.R. is on the Merit Roll. She said she has seen both children interact with their foster parents and both kids get along well with them. She summed up her testimony by saying "[J.R.] and [M.R.] have improved a whole lot since being removed from the care of their father and mother."

{¶20} Two of J.R.'s teachers testified at the evidentiary hearing. Their testimony showed J.R. was often tired and hungry when he came to school from his parents' home. They said his work was never done and he lost a lot of weight. Their testimony was that he did not do well with structure and rules, was messy, quite often angry, obstinate and needed to be re-directed a lot. Ms. McDowell testified that while Jesse was in his parents' care during the sixth grade he "missed many days of school."

{¶21} Both teachers testified about the significant change they saw in J.R. after he was placed in foster care. They report he has gained weight, is happy, well kept, focused, has more friends and "is on the right track." They also reported his attendance is very good at this time.

**{¶22}** Deb Yoder, J.R.'s foster mother testified that she and her family have a strong bond with J.R. (T. 246). She indicated he is a pleasure to have in their home. She stated J.R. looks up to her three sons and is considering a career in the military after spending time with her son who is currently in the Air Force (T. 248). She also indicated that J.R. is very good with younger children and he dotes on his toddler foster sister (T. 247). She also noted that J.R. sees M.R. often as well as relatives such as Pat Tabereaux. (T. 245). Mrs. Yoder indicated she has M.R. in her home so that J.R. can visit her and the Yoder's and M.R.'s foster parents, the DeWits, take weekend vacations together (T. 243-244). Mrs. Yoder stated that it is her intention to adopt J.R. should permanent custody be granted to HCDJFS. (T. 249). She indicated M.R. was having more trouble accepting foster care, but believed "she's not old enough to understand" Ms. Yoder testified her family interacts with M.R.'s foster family on a regular basis. She reported that M.R. stays in her home about every other weekend.

**{¶23}** Attorney David Hunter, Guardian Ad Litem for both the children submitted a written report to the Court prior to the evidentiary hearing. He recommended HCDJFS's Motion for Permanent Custody be granted. The Court also conducted an in camera interview of the children after the conclusion of the evidentiary hearing.

**{¶24}** On March 1, 2013, the trial court filed Findings of Fact and Judgment Entries in each child's case, which terminated Father's parental rights with respect to his minor children and granted permanent custody of the children to HCDJFS.

**{¶25}** It is from these entries that Father has appealed.

### Assignments of Error

**{¶26}** On appeal, Father asserts the following assignment of error,

**{¶27}** "I. THE HOLMES COUNTY JUVENILE COURT ERRED BY FINDING THAT IT WAS IN THE BEST INTERESTS OF BOTH CHILDREN TO TERMINATE PARENTAL RIGHTS, AND THE ORDER OF PERMANENT CUSTODY WAS OTHERWISE INSUFFICIENTLY SUPPORTED BY THE EVIDENCE.

**{¶28}** "II. THE COURT LACKED JURISDICTION TO GRANT A MOTION FOR PERMANENT CUSTODY OVER OBJECTION OF COUNSEL WHEN THE STATUTORY FRAMEWORK FOR SERVICE OF SUMMONS ON THE MOTION WAS NOT COMPLIED WITH. THE COURT ALSO LACKED JURISDICTION BECAUSE THE MOTION FAILS TO ALLEGE BEST INTERESTS. THE LATTER FACTOR IS PLAIN ERROR.

**{¶29}** "III. THE COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF LEONARD RICE BY ADMITTING INTO EVIDENCE A DRUG TEST RESULT LACKING IN PROPER FOUNDATION.

**{¶30}** "IV. IT WAS ERROR TO TERMINATE FATHER'S PARENTAL RIGHTS WHEN THE COURT HAD PREVIOUSLY DENIED HIS MOTION TO MODIFY VISITATION WITHOUT A HEARING, IN VIOLATION OF DUE PROCESS."

I.

**{¶31}** In his first assignment of error, Father argues that the trial court's decision granting permanent custody of his minor children was based upon insufficient evidence.

## A. Burden Of Proof

**{¶32}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), *quoting Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody

and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist.1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.

{¶33} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

### B. Standard of Review

{¶34} The Ohio Supreme Court has delineated our standard of review as follows,

> Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. See *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264, and *Frate v. Rimenik,* 115 Ohio St. 11, 152 N.E. 14.

**{¶35}** *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

**{¶36}** In *Cross*, the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

### C. Requirements for Permanent Custody Awards

**{¶37}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of

a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶38}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the

child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶39} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶40} 1. The child had been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months – R.C. 2151.414(B)(1)(d).**

{¶41} In the case sub judice, the trial court found, pursuant to R.C. 2151. 414(B)(1)(d) that the children had been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months.

{¶42} Before a public children-services agency or private child-placing agency can move for permanent custody of a child on R.C. 2151.414(B)(1)(d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22–month period." *In re: C.W.*, 104 Ohio St.3d 163, 2004–Ohio–6411, 818 N.E.2d 1176 at paragraph one of the syllabus. When calculating this time period, the court in *C.W.* cautioned, "the time that passes between the filing of a motion for

permanent custody and the permanent-custody hearing does not count toward the 12–month period set forth in R.C. 2151.414(B)(1)(d)." Id. at 167, 2004–Ohio–6411 at ¶ 26, 818 N.E.2d at 1180. Accord, *In re: N.C.,* 5th Dist. No. 2011-CA-00141, 2011-Ohio-6113, ¶32.

**{¶43}** In the case at bar, the grant of temporary custody of both children to HCDJFS occurred on August 27, 2010. The motion for permanent custody was filed on May 21, 2012. Thus, the children had been in the temporary custody of HCDJFS for at least 12 months of a consecutive 22-month period at the time the motion for permanent custody was filed[1]. Father has not challenged the twelve of twenty-two month finding.

**{¶44}** This finding alone, in conjunction with a best-interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun,* 5th Dist. No. 2008CA00118, 2008–Ohio–5458, ¶ 45.

### 2. The Best Interest of the Children.

**{¶45}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

---

[1] Aug. 22, 2010 to May 21, 2012 = 634 days (1yr., 8 months, 25 days).

**{¶46}** The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424(8th Dist.1994). A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding with respect to the other parent. The trial court would necessarily make a separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father.

**{¶47}** The trial court made findings of fact regarding the children's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy* Children, 5th Dist. 2000CA00244, 2000 WL 1700073(Nov. 13, 2000), quoting *In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424(8th Dist. 1994).

**{¶48}** As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* 5th Dist. No. CA-5758, 1981 WL 6321(Feb. 10, 1982). "Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988).

**{¶49}** In the present case, the trial court's decision indicates it considered the best interest factors. Upon review of the record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in J.R.'s and M.R.'s best interest. The trial court concluded the children's need for legally secure placement could not be achieved without awarding permanent custody to HCDJFS.

**{¶50}** The record makes clear that Father failed to complete the majority of the case plan provided by HCDJFS and failed to meet even the basic needs of the children.

**{¶51}** In the case at bar, in addition to the testimony, the trial court considered the wishes of the children and the report of the GAL.

**{¶52}** As set forth in our Statement of the Facts and Case, supra, Father failed to remedy the problems that initially caused the removal of the child from the home. Father was not consistent with his case plan. Very little if anything, has changed with respect to Father since this case began. He does not have stable housing. He does not have steady employment. He continues to battle problems with drugs and alcohol. He continues to miss visitations and to be unable or unwilling to follow the rules when he does have visits with the children.

**{¶53}** On the other hand, the children have begun to accept that their parents are unwilling or unable to do what is necessary to reunify the family. By the date of the evidentiary hearing, the children had been in the custody of HCDJFS for almost 29 months.

**D. Conclusion.**

**{¶54}** For these reasons, we find that the trial court's decision that permanent custody to HCDJFS was in J.R.'s and M.R.'s best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶55}** Father's first assignment of error is overruled.

II.

**{¶56}** In his second assignment of error, Father contends that the trial court lacked jurisdiction to conduct a permanent custody proceeding because he was not personally served with the motion for permanent custody.

**{¶57}** R.C. 2151.414(A)(1) mandates the juvenile court must schedule a hearing when a motion for permanent custody is filed, and provide notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action and to the child's guardian ad litem. Service may be made by delivering a copy to the person notified, by leaving a copy at the person's usual place of residence, or be sent by registered or certified mail. R.C. 2151.29. Father is a proper party pursuant to Juv. R. 2(Y); therefore, was entitled to notice.

**{¶58}** Juv. R. Rule 20 reads:

**{¶59}** (A) Service: when required

Written notices, requests for discovery, designation of record on appeal and written motions, other than those which are heard ex parte, and similar papers shall be served upon each of the parties.

(B) Service: how made

Whenever under these rules or by an order of the court service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service is ordered by the court upon the party. Service upon the attorney or upon the party shall be made in the manner provided in Civ. R. 5(B).

{¶60} In the case at bar, the "PROOF OF SERVICE" on the permanent custody motion certifies that a copy of the motion was served upon Court-appointed Counsel for each parent and the Guardian ad litem. Such service of a copy of the motion on the attorneys for the parents is consistent with Juv. R. 20(B).

{¶61} As the record indicates, Father was present with counsel for both days of the evidentiary hearing. Between the original filing of the motion for permanent custody in May 2012 and the actual hearing in January 2013, Father subpoenaed witnesses on his behalf and moved to have his children interviewed in camera by the trial court. Father further filed a motion to dismiss on June 11, 2012.

{¶62} It is clear Father knew HCDJFS filed a motion to terminate his parental rights and the trial date. Father was represented by counsel at the hearing. We find Father was provided with appropriate notice of the permanent custody hearing.

{¶63} Father's second assignment of error is overruled.

III.

{¶64} In his third assignment of error, Father argues that the November 7, 2012 drug screen test of Father that indicated the presence of cocaine in Father's system was improperly admitted into evidence.

**{¶65}** At the outset we note in *Williams v. Illinois*, —— U.S. ——, 132 S.Ct. 2221, 183 L.Ed. 2d 89 (2012), the Supreme Court tackled the constitutionality of allowing an expert witness to discuss a non-testifying expert's statements when the non-testifying expert's statements are not admitted in evidence.

**{¶66}** The defendant in *Williams* was convicted of rape. At trial, the prosecution called an expert witness who testified that a DNA profile produced by an outside laboratory, Cellmark, matched a profile produced by the state police lab using a sample of the defendant's blood. Id. at 2227. The defendant in *Williams* argued that the Confrontation Clause was violated when the witness "referred to the DNA profile provided by Cellmark as having been produced from semen found on the victim's vaginal swabs." Id. According to the defendant, his right to confrontation was violated because the witness did not have personal knowledge that the profile produced by Cellmark was based on vaginal swabs taken from the victim.

**{¶67}** Justice Alito, Chief Justice Roberts, Justice Kennedy, and Justice Breyer reasoned that the testifying expert could discuss the non-testifying expert's statements because the non-testifying expert's statements were not offered for their truth, but only to explain the assumption on which the testifying expert based her opinion. Id. at 2235–40. In dissent, Justices Kagan, Scalia, Ginsburg, and Sotomayor concluded that the non-testifying expert's statements were being offered for their truth and were testimonial, and thus found a Confrontation Clause violation. Id. at 2268– 72 (Kagan, J., dissenting). In a concurring opinion, Justice Thomas agreed that the non-testifying expert's statements were offered for their truth but concluded that they "lacked the requisite 'formality and solemnity' to be considered 'testimonial' for purposes of the

Confrontation Clause." Id. at 2255 (Thomas, J., concurring). *Accord, U.S. v. Soto*, __F.3d__, 2013 WL 3156598(1st Cir. June 24, 2013).

**{¶68}** In addition, even if error occurred in the admission of the test results, it was harmless. We note that any error will be deemed harmless if it did not affect the accused's "substantial rights." Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *United States v. Chapman,* 386 U.S.18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705(1967). Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶78, citing *Chapman; State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623(1976), paragraph three of the syllabus, *vacated in part on other grounds Lytle v. Ohio,* 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154(1978).

**{¶69}** In the case at bar, evidence independent of the test results was introduced concerning Father's battle with drug and alcohol abuse. Father has failed to establish that absent the admission of the November 7, 2012 test results, the trial court would have denied HCDJFS' motion for permanent custody.

**{¶70}** Father's third assignment of error is denied.

IV.

**{¶71}** In his fourth assignment of error, Father argues that he was denied due process by the court's denial of his motion to modify visitation without a hearing.

**{¶72}** "A fundamental requirement of due process is 'the opportunity to be heard' * * * at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S.

545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). "Due process of law implies, in its most comprehensive sense, the right of the person affected thereby to be present before the tribunal * * * to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved." *Williams v. Dollison*, 62 Ohio St.2d 297, 299, 405 N.E.2d 714(1980).

**{¶73}** In the case at bar, Father was given an opportunity to demonstrate his fitness and ability to parent his children at the evidentiary hearing on the motion for permanent custody. Evidence at that hearing demonstrated that when offered additional visitation time with the children under supervision, Father declined.

**{¶74}** The children love Father and Father loves his children and has developed a bond. The evidence demonstrated the successful efforts Father had made in the case to regain custody of his children. On that point, the evidence demonstrates that any improvement that Father has made in his life is tentative and, perhaps, temporary, and that he is at risk of relapse. The trial court found that, regardless of Father's compliance with aspects of his case plan, he was still not able to be a successful parent to his children. In the case of *In re: Summerfield*, 5th Dist. No. 2005CA00139, 2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

**{¶75}** Based upon the foregoing, as well as the entire record in this case, the trial court properly denied Father's motion to modify visitation.

**{¶76}** Because clear and convincing evidence in the record supports the trial court's judgment, we overrule Father's four assignments of error in their entirety, and the judgment of the Holmes County Court of Common Pleas, Juvenile Court Division is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, J., concur

_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN


_____
HON. JOHN W. WISE


WSG:clw 0703

[Cite as *In re L.R.*, 2013-Ohio-3104.]

IN THE COURT OF APPEALS FOR HOLMES COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF: L.R., M.R.     :
   :
   :
   :
   :
   :
   :      JUDGMENT ENTRY
   :
   :
   :
   :      CASE NO. 13CA004

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Holmes County Court of Common Pleas, Juvenile Court Division is affirmed.

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JOHN W. WISE