[Cite as *In re O.M.*, 2021-Ohio-1310.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: O.M. | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| | : | |
| | : | Case No. 20CA0017 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Coshocton County Court of Common Pleas, Juvenile Division, Case No. 21830087 |
| JUDGMENT: | AFFIRMED |
| DATE OF JUDGMENT ENTRY: | April 14, 2021 |

APPEARANCES:

For Plaintiff-Appellee:

SARA R. CHISNELL
Coshocton Co. JFS
725 Pine Street
Coshocton, OH 43812

For Appellant Nicholas Milici:

JEFFREY A. MULLEN
239 N. 4th St.
Coshocton, OH 43812

*Delaney, J.*

{¶1} Appellant Nicholas Milici ("Father") appeals from the October 16, 2020 Judgment Entry of the Coshocton County Court of Common Pleas, Juvenile Division granting permanent custody of his minor child, O.M., to appellee Coshocton County Job & Family Services ("Agency").

**FACTS AND PROCEDURAL HISTORY**

{¶2} Father has one minor child with Mother, O.M. Mother also has two additional minor children, D.D. Jr. and D.D., who were part of the underlying action with O.M. D.D. Jr. and D.D. have a different biological father.[1] This appeal addresses the relationship between O.M. and Father.

*Procedural history*

{¶3} On December 13, 2018, the Agency moved for an ex parte temporary custody order of all three children and the motion was granted that day. A shelter care hearing was held on December 14, 2018, and the Agency filed a complaint alleging O.M. was a dependent and neglected child, primarily due to the parents' drug use, domestic violence, and unstable living conditions.

{¶4} On March 7, 2019, O.M. was found to be dependent following an adjudicatory hearing. The trial court continued the temporary custody of the Agency and ordered Father and Mother to comply with the terms of a case plan filed on January 7, 2019.

---

[1] The father of D.D. Jr. and D.D. is incarcerated and did not play any role in the instant case.

{¶5} On May 10, 2019, the Agency filed a motion to suspend visitation with Mother due to her failure to participate in the case plan and her cancellation of visits with the children. Mother then began to engage in services and the Agency withdrew the motion. On May 29, 2019, however, Mother tested positive for methamphetamine, and also missed a visit with the children. The Agency filed a new motion to suspend Mother's visitation which was granted by the trial court on June 26, 2019.

{¶6} An annual review hearing was held on December 4, 2019. At the hearing, the trial court heard two additional motions: the guardian ad litem's (GAL) motion for a no-contact order with Mother and the Agency's motion for a 6-month extension. The trial court granted the no-contact order against Mother and granted a 6-month extension to allow Father time to continue working the case plan. The case plan was amended on December 11, 2019, to update Father's case-plan objectives.

{¶7} On June 8, 2020, the Agency filed a motion for permanent custody. On June 24, 2020, Mother filed a motion for a 6-month extension, which Father also joined. A hearing upon the motion for permanent custody was held on July 28 and 30, 2020.

*Drug use and domestic violence result in removal of children*

{¶8} The following evidence is adduced from the record of the permanent custody hearing.

{¶9} The Agency first became involved with the family in June 2018. O.M., age 5 at the time, was found wandering alone and didn't want to go home "because there was blood." T. 19. When the parents were found, Mother said she was in the process of breaking up with Father. That case was closed in August 2018 because Mother obtained independent housing and no further issues were reported between Mother and Father.

{¶10} The case underlying the instant appeal was opened on August 15, 2018, when Mother was reported to have hit one of O.M.'s siblings in the face. A caseworker met with Mother and observed sores on her body and behavioral indications she was under the influence. Mother submitted to a drug screen which was positive for methamphetamine and amphetamine.

{¶11} The caseworker was next alerted to a report of domestic violence between Mother and Father on September 26, 2018, indicating Mother and Father were living together again. Father was arrested on October 27, 2018, following yet another domestic violence incident. The children reported recurring domestic violence in the home, including Father firing a gun in the house during one incident. The children also reported awareness of Father's drug use because he overdosed in front of them and assaulted Mother in front of the children during the overdose. The caseworker visited the home on November 28, 2020, following a report of another domestic violence incident between Mother and Father, and O.M. reported physical violence between Mother and Father.

{¶12} On December 13, 2018, the Agency received another report of domestic violence and requested ex parte custody. The children were removed with the assistance of law enforcement. Mother submitted to a drug screen the same day and was positive for methamphetamine and amphetamine. Father submitted a drug screen for the caseworker on December 20, 2018, and was positive for methamphetamine.

{¶13} Mother's case plan included several requirements upon disposition. She was required to attend Coshocton Behavioral Health Choices (CBHC) for substance abuse treatment and mental health counseling; complete a parenting assessment with Dr. Wolfgang; work with First Step; follow all agencies' recommendations; and attend all

appointments. Mother was also ordered to obtain and maintain stable housing and employment.

{¶14} Father's case plan requirements were the same as Mother's, with the exception of attending First Step. Father engaged with CBHC in April 2019 and completed the Intensive Outpatient Program. He continued to complete required drug screens, although he tested positive for methamphetamine several times in September and October 2019. As a result of the positive drug screens, the Agency suspended visitation between Father and O.M. Father's last visit with O.M. was October 23, 2019.

{¶15} The GAL's motion for a no-contact order against Mother arose because Mother circumvented the Agency and contacted the children at sporting events and via calls, texts, and social media, despite having no visitation with the children because of her noncompliance with the case plan. The trial court granted the no-contact order. As of the date of the permanent custody hearing, Mother had not made enough progress to be added back onto the case plan.

{¶16} In December 2019, a new case plan was filed to update services for Father. Father was required to: complete parenting classes at Family and Children First Council; complete domestic violence perpetrator counseling with First Step; attend mental health counseling to address concerns raised in Dr. Wolfgang's assessment; follow all recommendations of CBHC; attend all appointments with service providers; and test clean on all drug screens by CBHC, the Agency, and Family Drug Court. Father was to report any changes in income, address, phone number, or household members to the Agency within 48 hours. Finally, Father was required to provide verification of housing and employment.

{¶17} Father did succeed with some portions of the case plan. He completed the domestic violence treatment and some mental health counseling.

{¶18} Father did not alleviate the Agency's concerns about violence in the house. Father did not complete the required parenting classes. As of the date of the permanent custody hearing, Father still resided with Mother in someone else's residence because the two lost the apartment they had shared. Significantly, therefore, the potential for domestic violence remained. On January 19, 2020, the Coshocton County Sheriff's Department responded to Father's address; Father stated a woman in the home became "unruly" and he called deputies. Father denied the woman involved was Mother, but refused to allow deputies into the residence to investigate.

{¶19} Father failed to obtain and maintain steady employment and started work at Auto Zone only a week before the permanent custody hearing, and failed to provide any substantial documentation of such to the caseworker.

{¶20} Regarding the Agency's concern about drug abuse, a CBHC counselor testified Father was recommended to complete an intensive outpatient program, but he tested positive for methamphetamine twice and once for THC. CBHC then recommended residential treatment. Father went to a residential treatment center on March 9, 2020, but left the same day, and has not enrolled in another residential treatment program. Father's engagement with CBHC has been sporadic and the counselor is concerned about the potential for ongoing drug abuse. Father remained in Phase II of Family Drug Court because he was not in compliance with his substance abuse treatment provider.

{¶21} Following the evidentiary hearing, the trial court found permanent custody is in the best interests of O.M. and her siblings and the children cannot be placed with the parents within a reasonable time. The children should not be placed with either parent pursuant to R.C. 2151.414(E) and the parents repeatedly failed to substantially remedy the conditions causing the children to be placed outside the children's home. The trial court thereupon denied the parents' motion for a 6-month extension and awarded permanent custody of O.M. and her siblings to the Agency via Judgment Entry dated October 16, 2020.

{¶22} Father now appeals from the Judgment Entry of the trial court.

{¶23} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶24} "I. THE TRIAL COURT'S JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶25} "II. THE TRIAL COURT'S JUDGMENT VIOLATES DUE PROCESS."

**ANALYSIS**

I., II.

{¶26} Father's two assignments of error are related and will be addressed together. Father argues the trial court's decision to grant permanent custody to the Agency is against the manifest weight of the evidence and deprived him of due process of law. We disagree.

{¶27} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the factfinder could base its judgment. *Cross Truck v.*

*Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (February 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶28} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's findings of fact. *Eastley* at ¶ 21

### Permanent Custody

{¶29} R.C. 2151.414(B)(1) states permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 2151.414, that it is in the best interest of the child and any of the following apply:

> (a) The child is not abandoned or orphaned* * *and the child
>
> cannot be placed with either of the child's parents within a
>
> reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period* * *

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶30} Therefore, R.C. 2151.414(B) provides a two-pronged analysis the trial court is required to apply when ruling on a motion for permanent custody. In practice, the trial court will determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶31} R.C. 2151.414(D) governs "best interests" and states the following:

(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶32} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a

reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶33} Here, R.C. 2151.414(B)(1)(d) applies because O.M. was in the temporary custody of the Agency in excess of twelve or more months of the consecutive twenty-two-month period and Father does not dispute this fact. This court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. *In the Matter of A.S., V.S., and Z.S.*, 5th Dist. Delaware No. 13 CAF 050040, 2013-Ohio-4018. Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence. *Matter of L.G.*, 5th Dist. Stark No. 2020-CA-00139, 2021-Ohio-743, ¶ 36.

{¶34} The trial court further found O.M. cannot be placed with Father within a reasonable time and should not be placed with either parent pursuant to R.C. 2151.414(E). Father failed repeatedly to substantially remedy the conditions that caused O.M. to be removed. We find the trial court's findings are supported by the manifest weight of the evidence.

{¶35} Father argues the trial court should have permitted a 6-month extension because he maintained stable housing, is employed, completed parenting classes, participated in family dependency court and domestic violence treatment, and began inpatient treatment. Pursuant to R.C. 2151.419, the agency which removed the child from the home must have made reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the home, or make it

possible for the child to return home safely. The statute assigns the burden of proof to the agency to demonstrate it has made reasonable efforts.

{¶36} At the time of the annual review hearing on December 4, 2019, the Agency filed to extend the case for 6 months, in part because Father had complied with some requirements. He obtained a psychological evaluation and employment, but was noncompliant with substance abuse treatment, evaluation for mental health treatment and medications, and was involved in a domestic violence incident with Mother.

{¶37} After the annual review, Father sought greater time with O.M., but due to the incident on January 19, 2020 and lack of substance abuse treatment, he made no progress. He delayed starting treatments, failed to make appointments, and tested positive for illicit substances repeatedly. Father simply failed to meaningfully comply with the case plan and never addressed the concerns underlying the removal of the children. Father did not accept responsibility for the behaviors that brought the matter into the court.

{¶38} Although the trial court was not required to make a reasonable-efforts determination, based upon our review of the record, we find substantial evidence to establish the Agency used reasonable efforts to reunify the family, but Father made no significant progress toward alleviating the Agency's core concerns for O.M. See, *L.G.*, supra, 2021-Ohio-743, ¶ 43.

{¶39} We further find no error in the trial court's finding that O.M.'s best interests would be served by granting permanent custody to the Agency.

{¶40} O.M. has a need for permanency. Her foster father testified that she was placed with the family in March 2019 and after a brief period of adjustment, was accepted and integrated into the family with the help of counseling. O.M. is placed with a foster-to-

adopt home and her foster parents are interested in pursuing adoption if permanent custody was granted to the Agency. Father and Mother are still married and reside together; although it would be possible for them to meet the timelines of the case plan, it is not likely due to the history of substance abuse and the resistance to mental health treatment. The caseworker testified a further extension of this case would be harmful to the children and holds only unknowns regarding Mother and Father, when the children deserve permanency and stability.

{¶41} We therefore conclude that the benefit of permanency and stability for O.M. outweighs any harm caused by severing the parental bond. *L.G.*, supra, 2021-Ohio-743, ¶ 45. We further conclude the findings of the trial court are supported by clear and convincing evidence.

{¶42} Father also summarily argues the trial court violated his right to due process in granting the motion for permanent custody. "A fundamental requirement of due process is 'the opportunity to be heard' * * * at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). "Due process of law implies, in its most comprehensive sense, the right of the person affected thereby to be present before the tribunal * * * to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved." *Williams v. Dollison,* 62 Ohio St.2d 297, 299, 405 N.E.2d 714(1980).

{¶43} In the instant case, Father was given an opportunity to demonstrate his fitness and ability to parent O.M. at the evidentiary hearing on the motion for permanent custody. Evidence at that hearing demonstrated that although Father made some

progress on his case plan, he failed to alleviate the overwhelming concerns for domestic violence and drug abuse in the home. Father was given one six-month extension but has nothing but excuses why he can't work, can't attend residential treatment, and can't make meaningful changes for the benefit of O.M.

{¶44} The evidence demonstrates that any improvement that Father has made in his life is tentative and, perhaps, temporary, and that he is at risk of relapse. *In re L.R.*, 5th Dist. Holmes No. 13CA004, 2013-Ohio-3104, ¶ 74. The trial court found that, regardless of Father's compliance with aspects of his case plan, he was still not able to be a successful parent to his children. In the case of *In re: Summerfield,* 5th Dist. No.2005CA00139, 2005–Ohio–5523, this Court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

{¶45} We can conclude that Father had the opportunity to present evidence, through counsel, regarding his ability to parent O.M. or make timely progress on the case plan, and that his due process rights were adequately protected. *Matter of T.N.*, 5th Dist. Delaware No. 19CAF020016, 2019-Ohio-2142, ¶ 25, citing *In re L.R., supra.*

{¶46} Father's two assignments of error are overruled.

## CONCLUSION

{¶47} Father's two assignments of error are overruled and the judgment of the Coshocton County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Wise, Earle, J., concur.