[Cite as *In re A.M.*, 2024-Ohio-2389.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| | : | Hon. W. Scott Gwin, J. |
| IN RE A.M. | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | Case No. 24-COA-004 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Ashland County Court
of Common Pleas, Juvenile Division,
Case No. 20213057


JUDGMENT:      AFFIRMED


DATE OF JUDGMENT ENTRY:      June 20, 2024


APPEARANCES:

For Parents-Appellants:

BRIAN A. SMITH
123 S. Miller Rd., Suite 250
Fairlawn, OH 44333

For Ashland County-DJFS:

BETH A. LIGGETT
110 Cottage St., 3rd Floor
Ashland, OH 44305

*Delaney, P.J.*

{¶1} Parents-Appellants appeal the December 28, 2023 judgment entry of the Ashland County Court of Common Pleas, Juvenile Division.

## FACTS AND PROCEDURAL HISTORY

{¶2} Appellants D.M. and P.M. are the biological parents of A.M., born in November 2020. A.M. was born at 24-weeks and placed in the NICU at Akron Children's Hospital ("ACH"). Parents have an older child, who was sent to live with relatives in Oregon after the birth of A.M.

### Initial Complaint

{¶3} Appellee Ashland County Department of Job and Family Services ("ACDJFS") became involved with Parents and A.M. in July 2021, when it received an Intake from ACH regarding A.M. Due to the child's premature birth and her complicated health needs, she was still in the ACH NICU on a ventilator and feeding tube. A.M. was diagnosed with spastic quadriplegia and cerebral palsy. ACH reported multiple issues with Parents' care for A.M. while the child was in the NICU, including that the child's trach tube kept coming dislodged, the child's bed was saturated with cold water, her feeds were being interfered with, and the child suffered a ruptured eardrum with no explanation. All concerns raised by the ACH staff were discovered promptly after Mother visited with the child. Father did not visit the child in the NICU. The hospital was also concerned about domestic violence between Mother and Father.

{¶4} An ACDJFS caseworker interviewed Mother. Mother stated that she accidentally knocked a cup of cold water on the child. Mother allegedly later admitted that

she intentionally poured water on the child at other times. Mother stated she had a traumatic brain injury and blacked out at times.

{¶5} On August 5, 2021, ACDJFS filed a Complaint and Motion for Ex Parte Order, alleging A.M. was an abused and dependent child. The trial court granted the motion, and the child was placed in Shelter Care of ACDJFS on August 5, 2021. The Shelter Care hearing was held on August 6, 2021. Mother and Father attended the hearing. On August 16, 2021, the trial court ordered that A.M. remain in the Shelter Care of ACDJFS. A Guardian ad Litem was appointed for the child.

**Hearings**

{¶6} The Adjudicatory Hearing was held on September 1, 2021. Via judgment entry filed November 4, 2021, the trial court found A.M. was a dependent child as alleged in the Complaint. The child was placed in the temporary care of ACDJFS.

{¶7} A Dispositional Hearing was held on October 27, 2021 and continued to December 13, 2021 so Mother could obtain counsel.

{¶8} A GAL report filed on September 22, 2021, recommended that A.M. remain the temporary legal custody of ACDJFS.

{¶9} A Dispositional Hearing was held on December 13, 2021. By judgment entry filed on December 14, 2021, the trial court ordered that A.M. remain in the temporary custody of ACDJFS.

{¶10} While in the NICU, A.M. was cared for by an ACH Nurse, B.D. The child was discharged from the ACH NICU in December 2021 and placed in the foster care of Nurse B.D. When A.M. was released from the hospital, she still had a tracheostomy, feeding tube, and was oxygen-dependent. She needed physical, speech, and

occupational therapy. She required inhalers and breathing treatments. Due to her spastic quadriplegia and cerebral palsy, A.M. had difficulty with gross and fine motor skills and was non-ambulatory.

{¶11} A Review Hearing was held on January 18, 2022. Parents had completed their mental health assessments, but the reports were not completed for the trial court's review.

{¶12} On July 8, 2022, ACDJFS filed a motion to extend temporary custody. The GAL report filed on July 15, 2022, recommended the child remain in the custody of ACDJFS.

{¶13} The trial court held the Annual Review Hearing on July 21, 2022, where it also considered the motion to extend temporary custody. Via judgment entry filed on August 3, 2022, the trial court found that Parents had made substantial progress on the case plan objectives but lacked a sufficient bond with the child. The trial court ordered that A.M. remain in the temporary custody of ACDJFS for an additional six months.

{¶14} On August 19, 2022, the trial court held a Review Hearing. ACDJFS advised the trial court that Parents still needed training regarding the child's feeding tube. Mother's mental health evaluation and treatment recommendation had not been finalized at the time of the hearing. ACDJFS was exploring an alternative permanency plan for Parents, which included family team meetings and determining all of the medical training Parents required to safely care for A.M.

{¶15} Mother filed a Motion to Modify Disposition on November 10, 2022.

{¶16} The trial court held a Review Hearing on November 15, 2022. The trial court ordered that parenting time to occur between the child and Parents one time per week for

six hours at a time, but the parenting time was to remain supervised. The trial court also ordered that ACDJFS was to transition all services for the child to the Ashland County area to help with reunification.

{¶17} ACDJFS filed a second motion to extend temporary custody on January 6, 2023. On February 1, 2023, the trial court held a hearing on both Mother's motion to modify disposition and the motion to extend temporary custody. By judgment entry filed July 11, 2023, the trial court denied Mother's motion to modify disposition and granted the second motion to extend temporary custody, finding it was in the best interests of the child.

**Case Plans**

{¶18} The initial case plan was filed on September 1, 2021 and adopted by the trial court on November 4, 2021. The amended case plan was filed and adopted on February 1, 2022. An amended case plan was filed, corrected, and adopted by the trial court on March 24, 2022. An amended case plan was filed and adopted on August 30, 2022. An amended case plan was filed and adopted by the trial court on December 16, 2022. The case plan was amended and adopted on July 20, 2023.

{¶19} Parents completed parenting classes. Parents completed a mental health assessment. Mother was in counseling and under the care of a psychiatrist and taking prescribed medication. Parents attended couples counseling. Father completed group therapy for domestic violence.

{¶20} Father is employed as freight driver for a trucking company. Mother is not employed outside the home. Mother has her driver's license. The home was found to be clean and appropriate.

{¶21} Mother attended almost all of A.M.'s medical and therapy appointments. Parents asked ACDJFS to assist with the creation of a "cheat sheet" to help Parents manage A.M.'s medical equipment and procedures. In 2023, Nurse B.D. provided Parents with a binder of information as to how to care for A.M. and use her medical equipment.

**Permanent Custody**

{¶1} Mother filed a motion to modify and/or terminate disposition on April 19, 2023. ACDJFS filed a motion for permanent custody on June 28, 2023. The permanent custody hearing was held on December 13, 14, and 15, 2023.

{¶2} A.M. requires full-time medical care. While Nurse B.D. provides her care, A.M. also has a nurse that provides in-home care because A.M. cannot be left alone and requires constant monitoring of her breathing and feeding tube. The child's primary care physician testified that A.M. is his highest needs patient. The child cannot crawl, stand, or independently sit up. A.M. requires the use of a feeding tube to supplement solid-food feedings. A.M. receives multiple forms of therapeutic intervention and is under the medical care of an ENT, pulmonologist, plastic surgeon, and neurosurgeon.

{¶3} After A.M.'s placement with Nurse B.D., the Parents initially had supervised visitation with A.M. two hours once a week, which increased to two days per week. Parents did not progress past supervised visitation. Mother attended the child's medical and therapy appointments, but Father did not.

{¶4} Via judgment entry filed on December 28, 2023, the trial court terminated Parent's parental rights to A.M. and awarded custody of the child to ACDJFS. The trial court first found that A.M. had been in the temporary custody of ACDJFS for more than twelve of the preceding twenty-two months. The trial court next found that it was in the

best interests that A.M. be placed in the permanent custody of ACDJFS. It found the child had significant health issues and required very specific and necessary medical care. Neither parent had ever provided full-time care for the child. The child was continuously hospitalized from birth until removal. While Parents had made progress on their case plan, the trial court found Parents did not make sufficient progress such that they were able to provide safe and secure full-time care for the child.

{¶5}    It is from this judgment entry that Parents now appeal.

**ASSIGNMENTS OF ERROR**

{¶6}    Parents raise two Assignments of Error:

I. THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO APPELLEE, ASHLAND COUNTY JOB AND FAMILY SERVICES, SINCE APPELLEE FAILED TO DEMONSTRATE, BY CLEAR AND CONVINCING EVIDENCE, THAT GROUNDS EXISTED FOR PERMANENT CUSTODY, AND SINCE THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO APPELLEE, ASHLAND COUNTY JOB AND FAMILY SERVICES, BECAUSE THERE WAS NOT COMPETENT, CREDIBLE EVIDENCE THAT APPELLEE MADE REASONABLE EFFORTS TO REUNIFY THE FAMILY.

**ANALYSIS**

**I. and II.**

{¶7} We consider Parents' first and second Assignments together because they are interrelated. Parents contend the trial court erred in finding it was in the best interests of the child to be placed in the permanent custody of ACDJFS. We disagree.

{¶8} In the instant case, R.C. 2151.414(B)(1)(d) applies to A.M. There is no dispute that she was in the temporary custody of ACDJFS for twelve or more months of a consecutive twenty-two-month period. This Court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. *In re D.H.*, 2022-Ohio-4495, ¶ 59 (5th Dist.) citing *Matter of O.M.*, 2021-Ohio-1310, ¶ 33 (5th Dist.) citing *In the Matter of A.S., V.S., and Z.S.*, 2013-Ohio-4018 (5th Dist.). Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence. *Matter of L.G.*, 2021-Ohio-743, ¶ 36 (5th Dist.).

{¶9} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D)(1) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved

without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶10} A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re E.H.*, 2022-Ohio-1682, ¶ 101 (5th Dist.) quoting *In re Mauzy Children*, 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal*, 85 Ohio App.3d 309, 316 (8th Dist. 1994). In this case, we find there was competent, credible evidence to support the trial court's decision that it was in the best interest of A.M. to be placed in the permanent custody of ACDJFS.

{¶11} Parents contend the trial court's finding that neither parent had ever provided full-time care to the child incorrectly implied that was due to a failure by the Parents. They argue their inability to provide care was due to the actions and inactions of ACDJFS. While A.M. was in the hospital, she was placed in the temporary custody of ACDJFS where Parents could only visit with A.M. under supervised conditions. A.M. moved directly from the hospital to Nurse B.D.'s care, where again they could only visit with A.M. under supervised conditions. There was no opportunity to provide full-time care for A.M. ACDJFS repeatedly changed caseworkers assigned to the case. The case plan was amended multiple times. The thrust of Parents' argument on appeal is that ACDJFS did not make reasonable efforts to educate and train them as how to care for their child,

so therefore they could not move forward in their ability to provide safe and secure care for their child.

{¶12} In 2022, Parents had visitation with A.M. for six-hours a day, once a week. Nurse B.D. attended the visitation and assisted Mother with A.M.'s care, during which she attempted to teach her how to care for A.M. Nurse B.D. testified that she explained how to care for A.M. but questioned Mother's cognitive ability to retain and use the information. Nurse B.D. and A.M.'s home care nurse testified that at medical appointments, Mother appeared to struggle to understand the medical information presented to her and how to apply that information to A.M.'s care. Mother often looked to Mother for help when trying to care for A.M. We note the silence in the record and arguments on appeal as to Father's ability to care for A.M. The record shows that Father did not attend A.M.'s appointments to learn how to care for A.M. The care-taking burden apparently fell only to Mother.

{¶13} Nurse B.D. and her family were bonded with A.M. The child had limited ability to communicate, but Nurse B.D. was able to understand A.M.'s communication and respond accordingly. The foster family was interested in adopting A.M. The child had a more limited bond with Parents, one witness testifying the bond appeared akin to a child's bond with their babysitter.

{¶14} In this case, the trial court was tasked to consider what was in the best interests of this medically fragile child. The question was not only whether Parents loved this child, but could they foster growth, stability, and security for this child with permanently extraordinary medical needs. The trial court weighed the evidence and considered the credibility of the witnesses to determine that it was in the best interests of the child to be placed in the permanent custody of ACDJFS. We agree.

{¶15} The two Assignments of Error of Appellants are overruled.

## CONCLUSION

{¶16} The judgment of the Ashland County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, P.J.,

Gwin, J. and

Baldwin, J., concur.