[Cite as *In re T.P.*, 2022-Ohio-903.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: T.P. | : | JUDGES: |
| | : | |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | |
| | : | Case No. 21CA25 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Knox County Court of Common Pleas, Juvenile Division, case no. 2202067 |
| JUDGMENT: | AFFIRMED |
| DATE OF JUDGMENT ENTRY: | March 21, 2022 |

APPEARANCES:

For Appellee Knox Co. JFS:

ASHLEY L. JOHNS
KNOX CO. JFS
117 East High Street
Mount Vernon, OH 43050

For Appellant Mother:

DEVIN M. TRAINER
KNOX CO. PUBLIC DEFENDER
110 East High Street
Mount Vernon, OH 43050

*Delaney, J.*

{¶1} Mother L.P. appeals from the October 27, 2021 Judgment Entry of the Knox County Court of Common Pleas, Juvenile Division granting permanent custody of her two minor children, H.P. ("Daughter") and T.P. ("Son"), to appellee Knox County Department of Job and Family Services ("Agency").

{¶2} The instant case is related to that of H.P., 5th District Knox 21CA24. The cases are related but not consolidated.

**FACTS AND PROCEDURAL HISTORY**

{¶3} Mother is the biological mother of Daughter and Son. The identity of the children's father(s) is/are unknown. At the time of the permanent custody hearing on September 28, 2021, Daughter was approximately 17 years old and Son was approximately 7 years old.

{¶4} Until May 2020, Daughter and Son were in the legal custody of a family named Keller. The Kellers do not appear in the instant case, have not had contact with the Agency, and do not seek further custodial arrangements with the children.

{¶5} On May 4, 2020, the Agency filed an ex parte motion seeking temporary custody of the children based upon allegations of physical abuse in the Keller home. The trial court granted temporary custody of the children to the Agency. On May 5, 2020, the Agency filed complaints alleging abuse, neglect, and dependency.

{¶6} The children were continued in the temporary custody of the Agency on June 1, 2020. At an adjudicatory hearing on July 2, 2020, the trial court found the minor children to be dependent pursuant to R.C. 2151.04(C) based upon agreement of the parties and continued the Agency's temporary custody. A dispositional hearing was held

on July 29, 2020; the trial court adopted a case plan and continued the Agency's temporary custody.  Review hearings were held on October 1, 2020, December 29, 2020, and April 15, 2021; at each review, the trial court continued the Agency's temporary custody.

{¶7}  On July 8, 2021, the Agency moved for permanent custody.  An evidentiary hearing was held on September 28, 2021. On October 27, 2021, the trial court filed a judgment entry granting permanent custody of the children to the Agency.

**Permanent custody motion arose from psychological evaluation of Mother**

{¶8}  The following  evidence is adduced  from the record  of the  permanent custody hearing on September 28, 2021.

*Mother's interview with Dr. Robin Tener*

{¶9}   Dr. Robin Tener, a clinical psychologist, met with Mother in September 2021 to evaluate whether the children could be placed with her after removal from the Kellers. At the time of this meeting, Mother was in the company of Caregiver, with whom Mother lived at the time. Caregiver was responsible for driving Mother to and from doctor's appointments and supervising her general well-being.  Tener opined that Mother was not capable of taking care of herself without the close supervision of Caregiver.

{¶10} Tener perceived Mother to be very dependent on Caregiver, to the extent that Mother did not know her own doctors or healthcare providers. Caregiver had to provide all relevant information to Tener.  Ultimately Mother's relationship with Caregiver ended due to a physical assault, although the roles of perpetrator and victim are not in the record.

{¶11} Mother could not complete all of the testing Tener required because she was unable to understand the questions. Although Tener could read the questions to her, Tener could not interpret or explain them for Mother. Consequently some portions of the intellectual and cognitive testing remained incomplete. Tener testified Mother did not have the intellectual capacity to read and understand the questions.

{¶12} Tener concluded she has "many, many concerns" about Mother's ability to function independently as an adult without a tremendous amount of external support. Specifically, Tener cited Mother's ability to make decisions, take medications, determine her own safety, manage anger, determine the children's needs, and understand her own health and welfare requirements are significant deficits for Mother. Tener described Mother as a very vulnerable person capable of being exploited.

{¶13} At the time of the initial meeting with Tener, Mother was married but had little or no contact with Husband. Mother said Husband was not supportive of her financial or emotional needs and failed to communicate for months at a time while he visited an ex-wife and children in his country of origin. Mother told Tener Husband "married her for a green card" two months after she met him and she intended to divorce him. Mother married Husband at the instigation of Brother-in-Law, who was married to Mother's neighbor, Sister-in-Law. Mother described frustration with her marriage because Husband failed to acknowledge any relationship with her. Tener also testified Mother knew Daughter expressed a lot of anxiety regarding Mother's relationship with Husband, and Daughter does not want to live with Husband.

{¶14} Mother's hope for reunification with the children in March 2021, therefore, depended upon her plan for the children to move into the trailer with her and Caregiver.

This was never a viable option, however, because Caregiver told Mother there was no room in the trailer for the children. Moreover, the Agency would not approve placement of the children in Caregiver's home because Caregiver had her own history with Children's Services.

{¶15} However, when Mother's relationship with Caregiver fell through, she moved to Columbus with Husband, which will be addressed infra.

{¶16} Tener noted that Mother's mental, emotional, and physical problems cannot be resolved. Mother was born with fetal alcohol syndrome and has significant impairments in her cognitive functions and reasoning processes. In Tener's opinion, Mother lacks the basic necessary skills to care for herself and her minor children, and no programming exists that can resolve these difficulties.

*Daughter's institutionalization*

{¶17} At the time of the permanent custody hearing, Daughter was institutionalized at Fox Run Center for Children and Adolescents, and a therapist testified about her treatment there.

{¶18} Daughter has diagnoses of major depressive disorder, ADHD, anxiety disorder, and confirmed childhood physical abuse. She was also undergoing evaluation for additional possible diagnoses of P.T.S.D. and childhood sexual abuse. Daughter was admitted to the facility in June 2021 and as of September, treatment had just begun because it took months to stabilize her behaviors. The therapist testified that Daughter has attempted suicide many times; self-harms; has frequent suicidal ideations; refuses school and therapy groups; and suffers from severe depression. Daughter was on numerous restrictions in the facility to keep her safe; for example, she was observed every

5 minutes and allowed limited clothing to prevent her from harming herself. Daughter was expected to remain at Fox Run until at least summer 2022, and the therapist testified it is impossible to predict what her discharge plan will look like. Daughter's history of trauma, self-harm, grief, and loss will continue to require intensive therapy.

{¶19} The therapist also testified about Daughter's relationship with Mother; during her time at Fox Run, Mother and Daughter have had one supervised phone call. The call was "pleasant" but Mother made unfulfilled promises to Daughter, a habit of Mother's which characterizes her relationship with both children. The therapist said Mother's unfulfilled promises lead to "increased behaviors" by Daughter, and Daughter has not asked to speak to Mother again. In therapy, Daughter has stated she is afraid of Mother; she described living in a cluttered home with Mother and having to care for her sibling because Mother would disappear for hours at a time.

{¶20} Ultimately, the therapist concluded, Daughter cannot function in a living environment with Mother and such an arrangement would not be safe for Mother or the children. Daughter needs permanency, stability, and adults who are willing and able to be consistently engaged with her.

*Son is stable in foster home*

{¶21} The family's ongoing caseworker testified about her history with the case and each child individually.

{¶22} After removal from the Kellers, Son was ultimately placed with Foster Mother, where he remains to this day. Son is described as stable and well-adjusted; he does well in the foster home and has a good relationship with other foster children in the home. Son is in therapy to maintain his stability and does have supervised visitation with

Mother. Mother is appropriate with Son although their relationship is more like friends than parent and child; for example, Mother frequently brought Son large amounts of candy until she recently understood he needs to eat more healthfully. Again, Mother makes many promises to Son that are not fulfilled.

{¶23} After removal from the Kellers and before her placement at Fox Run, Daughter had a chaotic history of placements. She was hospitalized several times for suicidal ideations. She was initially placed with the same Foster Mother as Son, but Foster Mother was not equipped to handle Daughter's special needs. Daughter had several behavioral placements and acted out severely, running away, self-harming, and becoming violent with staff. She was moved to a group home; in that setting, she was aggressive with residents and staff, was hospitalized at least four times, and ran away twice. During one of the runaway periods, Daughter was sexually assaulted. Ultimately Daughter was institutionalized at Fox Run and for therapeutic reasons, she has no visitation with Mother.

{¶24} Mother has been compliant with the Agency and is "easy to work with." The caseworker noted Mother works on her mental health, has obtained stable housing, and is "appropriate" with the children, but she has not been ordered to complete a parenting class because she could not understand the class. The caseworker has visited Mother's residence in Columbus with Husband, which is very clean and stocked with Mother's medications and groceries.

{¶25} There are no appropriate kinship placements for the children. Although Mother requested a background check for Husband, the caseworker could not reach Husband and his green card was due to expire soon. Husband spends significant

amounts of time outside the country and has little or no contact with Mother during those periods. Husband has had no contact at all with Daughter and has had only phone contact with Son.

{¶26} The caseworker testified that the psychological evaluation of Mother by Dr. Tener is the basis for the permanent custody motion. Despite Mother's good relationship with the Agency, the Agency must pursue permanent custody of the children because Mother is not capable of meeting their needs.

*Testimony of Mother, Husband, and Sister-in-Law*

{¶27} Mother testified on her own behalf and clearly loves her children. She said she is learning to take better care of herself and described a positive living environment with Husband and Sister-in-Law. Mother acknowledged she once believed Husband married her for a green card but said he is now supportive. She acknowledged she is still learning how to address her children's needs.

{¶28} Husband testified he does not speak English well and his green card is expiring soon, although he has applied for a new one. He works for Door Dash and a moving company. He doesn't understand the question when asked if he has a criminal record. He has children of his own, including a son who lives with him in the Columbus residence, which Husband owns with his cousin.

{¶29} Sister-in-Law is in the process of divorcing Husband's brother, whose whereabouts are unknown. She has a 14-year-old child but gave legal custody of the child to a relative. She met Mother when they were neighbors and introduced Mother to Husband. Sister-in-Law does not know Mother's children or anything about their needs.

*Guardian ad litem recommends permanent custody*

{¶30} Finally, the trial court admitted the written report of the guardian ad litem (GAL) and asked the GAL for his opinion on the record. The GAL recommended that the trial court grant the motion for permanent custody and noted the children have not been in Mother's physical custody for over 5 years. The GAL is sympathetic to Mother and her efforts, but Mother's deficiencies cannot be remedied and the needs of the children are too great. The GAL further noted the children are not bonded to each other and do not want to live together in the same environment; Daughter has been violent toward Son. Neither Daughter nor Son have asked to live with Mother.

{¶31} The trial court took the matter under advisement and on October 27, 2021, issued a Judgment Entry granting permanent custody of the children to the Agency.

{¶32} Mother now appeals from the trial court's Judgment Entry.

{¶33} Mother raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶34} "THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE CHILDREN WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

**ANALYSIS**

{¶35} In her sole assignment of error, Mother argues the trial court's decision granting permanent custody of the minor children to the Agency is against the manifest weight and sufficiency of the evidence. We disagree.

{¶36} R.C. 2151.414(B)(1) states permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a

hearing held pursuant to division (A) of R.C. 2151.414 that it is in the best interest of the child and any of the following apply:

(a) The child is not abandoned or orphaned * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶37} R.C. 2151.414(B) provides a two-pronged analysis the trial court is required to apply when ruling on a motion for permanent custody. In practice, the trial court will determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶38} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear

and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *See also, C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel*, 55 Ohio St.3d at 74.

{¶39} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id.* Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984): The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the

parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinge*r, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *see, also, In re: Christian*, 4th Dist. Athens No. 04CA10, 2004-Ohio-3146; In re: C.W., 2nd Dist. Montgomery No. 20140, 2004-Ohio-2040.

## R.C. 2151.414(B)(1)(d)

{¶40} In the instant case, the trial court concluded that R.C. 2151.414(B)(1)(d) applied to the children, to wit, they were in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two-month period. The children were placed in the temporary custody of the Agency on May 4, 2020, over sixteen months before the hearing took place. We find the trial court's judgment on this point is supported by competent, credible evidence. *Schiebel*, supra, 55 Ohio St.3d at 74. Mother does not dispute this fact.

{¶41} This Court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. *Matter of O.M.*, 5th Dist. Coshocton No. 20CA0017, 2021-Ohio-1310, 2021 WL 1424200, ¶ 33 citing *In the Matter of A.S., V.S., and Z.S.*, 5th Dist. Delaware No. 13 CAF 050040, 2013-Ohio-4018. Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence. *Matter of L.G.*, 5th Dist. Stark No. 2020-CA-00139, 2021-Ohio-743, ¶ 36.

## Reasonable Period of Time

{¶42} Having determined the children were in the temporary custody of the Agency for over twelve months of a consecutive twenty-two-month period, the trial court was not required to make findings as to a reasonable period of time under R.C.

2151.414(E). Nevertheless, the trial court additionally found the children could not be placed with Mother within a reasonable period of time and should not be placed with Mother. *See, In re DA.J.*, 8th Dist. Cuyahoga No. 110393, 2012-Ohio-3102, ¶ 61.

{¶43} R.C. 2151.414(E) sets out the factors relevant to determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. The section states in pertinent part the following:

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
>
> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In

determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * **.

(16) Any other factor the court considers relevant.

{¶44} A trial court may base its decision that a child cannot be placed with either parent within a reasonable time, or should not be placed with either parent, upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. See, *e.g., In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 50; *In re William S.,* 75 Ohio St.3d 95, 99, 661 N.E.2d 738 (1996).

{¶45} In the instant case, the trial court did not explicitly cite to a single factor in R.C. 2151.414(E). However, the detailed findings in the October 27, 2021 judgment entry and the entire record in this matter make it apparent the trial court relied on several of the factors in R.C. 2151.414(E), including R.C. 2151.414(E)(1), failure to remedy conditions and R.C. 2151.414(E)(2), chronic mental illness or intellectual disability. See, *In re B.W.*, 5th Dist. Tuscarawas No. 2016 AP 09 0045, 2017-Ohio-605, ¶ 39, appeal not allowed, 149 Ohio St.3d 1409. The trial court noted Mother's significant cognitive deficits and their effect on her ability to understand her own needs and those of her children. No programming is available to sufficiently remedy Mother's organic mental and emotional issues, which include a traumatic brain injury, depressive disorder, impulse control issues, ADHD, and possible borderline personality disorder.

**Best Interests**

{¶46} Mother's sole assignment of error contends that the trial court's analysis of the best interests of the children is against the manifest weight and sufficiency of the evidence.

{¶47} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

> (D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶48} Both the caseworker and the GAL testified it would be in the children's best interests to be placed in the permanent custody of the Agency. Neither child has expressed a desire to live with Mother, and Daughter strongly does not want to live with Mother, especially if Mother is living with Husband. The GAL recommends that Daughter and Son should not live together in the same environment because Daughter can be a danger to Son. Both children have achieved a degree of stability in their current

placements; the record establishes that bringing them into Mother's environment could be catastrophic for all three.

{¶49} Mother contends, though, that the case plan should have been extended and left open for the purpose of establishing legal custody of the children to Husband and/or Sister-in-Law. As appellee points out, neither of those people filed motions for legal custody. Both of these people testified at the hearing and it is not evident either wants custody of the children or understands the needs of the children.

{¶50} Moreover, as demonstrated by the tragic record of this case, Mother herself does not have the ability to care for the children's unique needs, and both children are presently in appropriate, safe placements where their needs are being met. Husband claimed he cannot understand English to the extent that he could not tell the trial court whether he wants or accepts custody of the children, or whether he has any criminal record. He is absent from Mother's life for long periods of time. Mother's argument ignores the fact that as of the hearing date, Husband's green card was about to expire and his continued residency is questionable at best.

{¶51} Sister-in-Law admittedly orchestrated Mother's marriage to Husband and was unaware of the special needs of Mother's children. Sister-in-Law voluntarily relinquished custody of her own child to a relative. She did not demonstrate to the trial court that she is in any position to help Mother appropriately care for her own needs or those of the children.

{¶52} Meanwhile, the children's needs are being addressed in their respective placements. The children deserve permanency and Mother is not presently in a position to provide for their needs. Along with the trial court, GAL, therapists, and doctors who

have evaluated Mother, we recognize her love for her children and her best attempts to create an environment in which she can reunite with the children, but the organic issues are too significant to be remedied.

{¶53} The trial court's finding that the best interests of the children are served by a grant of permanent custody to the Agency is not against the manifest weight of the evidence and is supported by sufficient evidence.

{¶54} Mother's sole assignment of error is overruled.

## CONCLUSION

{¶55} Mother's sole assignment of error is overruled and the judgment of the Knox County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Wise, Earle, P.J. and

Wise, John, J., concur.