[Cite as *In re L.G.*, 2021-Ohio-743.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF L.G. AND J.G. | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| | : | |
| | : | |
| | : | Case Nos. 2020-CA-00139 |
| | : | 2020-CA-00140 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Court of Common
                                Pleas, Case Nos. 2018-JCV-1331 &
                                2018-JCV-1332

JUDGMENT:                       Affirmed

DATE OF JUDGMENT:               March 11, 2021

APPEARANCES:

For Appellant - Mother                    For Appellee

TY A. GRAHAM                              BRANDON J. WALTENBAUGH
4450 Belden Village Street NW             Stark County JFS
#703                                      402 2nd St SE
Canton, OH  44718                         Canton, OH 44702

*Wise, Earle, J.*

{¶ 1}   Appellant, J.H., mother of L.G. and J.G. (Mother) filed this appeal from the judgment entered in Stark County Court of Common Pleas, Juvenile Court Division, which terminated all parental rights, privileges and responsibilities of Mother and ordered that permanent custody of the minor children be granted to Stark County Department of Job and Family Services, (SCJFS).

{¶ 2}   This appeal is expedited, and is being considered pursuant to App.R.11.2(C). The relevant facts leading to this appeal are as follow:

FACTS AND PROCEDURAL HISTORY

{¶ 3}   On December 21, 2018, SCJFS filed complaints requesting protective supervision of and alleging dependency and neglect of five-year-old L.G. and four-year-old J.G. J.G. is afflicted with cerebral palsy and is medically fragile. The allegations contained in the complaints included medical, nutritional, and educational neglect, hygiene issues, and L.G coming to school smelling of marijuana. The complaints additionally outlined concerns regarding Mother's drug use, and refusal to cooperate with the children's schools and SCJFS in their attempts to resolve the concerns.

{¶ 4}   An emergency shelter care hearing was held on December 26, 2018. Mother did not appear and father was incarcerated. Rather than grant protective supervision, the trial court found probable cause existed for SCJFS's involvement and that continued placement in the children's home would be contrary to their health and welfare. L.G. and J.G. were therefore placed in the emergency temporary custody of SCJFS. On January 8, 2019, SCJFS filed amended complaints seeking temporary custody of the children.

{¶ 5}   On various dates between March 5 and March 19, 2019, the trial court heard evidence regarding the complaints and initial disposition of the children. Testimony revealed J.G. was in need of leg braces, a special wheelchair, and due to difficulty swallowing, has dietary restrictions. J.G. was enrolled at Eastgate, a Stark County Board of Developmental Disabilities (Stark DD) school. Eastgate staff had concerns regarding mother's lack of involvement in J.G.'s treatment plan. J.G. frequently arrived at school dehydrated, and with his hair dirty and matted. He needed to see various specialists to address his challenges, but mother ignored attempts by Eastgate staff to get mother engaged in J.G.'s treatment plan. Stark DD therefore referred the matter to SCJFS.

{¶ 6}   L.G. was enrolled at Duber Elementary but his attendance was very poor and he had behavior issues. When L.G. did go to school, he smelled of marijuana. On one occasion the odor was so strong, school officials searched his backpack thinking he was in possession of marijuana. Attempts were made by Duber staff to mediate L.G.'s attendance issues with Mother to no avail.

{¶ 7}   On March 19, 2019 the trial court placed the children in the temporary custody of SCJFS, adopted and approved the initial case plan, found SCJFS had made reasonable efforts to finalize the permanency planning, compelling reasons existed to preclude a filing for permanent custody and ordered status quo.

{¶ 8}   Mother's case plan required her to engage in mental health and substance abuse treatment, obtain sobriety, attend medical appointments and engage in services for the children, and attend Goodwill parenting classes after obtaining sobriety.

{¶ 9}   The matter was reviewed on June 19, 2019. The court again approved the case plan, found reasonable efforts by SCJFS, and compelling reasons existed to

preclude a filing for permanent custody. At that point, mother was testing positive for marijuana and cocaine, and could not make progress with her case plan until she obtained sobriety.

{¶ 10} On October 17, 2019, SCJFS filed a motion for permanent custody. The matter was set for evidence on January 28, 2020.

{¶ 11} The next review took place on November 15, 2019. The court approved and adopted the case plan, found SCJFS had made reasonable efforts to finalize permanency planning, ordered status quo and found no compelling reasons existed to preclude a filing for permanent custody. Mother was still using drugs, refused to cooperate with drug screening, was not engaged in mental health services, and had recently been charged with a felony involving a gun.

{¶ 12} On January 14, 2020, Mother filed a motion to extend temporary custody for six months. Pursuant to Mother's request the evidentiary hearing was continued to April 30, 2020.

{¶ 13} On April 17, 2020, the trial court continued the matter to July 22, 2020 due to the Covid-19 pandemic. The court reviewed the matter on May 14, 2020 and approved and adopted the case plan, found reasonable efforts by SCJFS and ordered status quo. The trial court further found no compelling reason to preclude the filing for permanent custody. The court noted the children were doing well in foster care, and Mother remained non-compliant with counseling and drug screening, and had not begun parenting classes due to her failure to achieve sobriety.

{¶ 14} On May 15, 2020 SCJFS filed a second motion for permanent custody, this one alleging the children could not be placed with either parent within a reasonable time

and that the children had been in the temporary custody of SCJFS for 12 or more months in a consecutive 22-month period.

{¶ 15} On July 14, 2020, Robin Minor, the Guardian ad Litem for the children filed her final report recommending the children be placed in the permanent custody of SCJFS. Minor indicated the children were doing well in their foster placements and Mother had failed to make any progress in her case plan.

{¶ 16} On July 22, 2020, the trial court heard testimony on the motion for permanent custody. SCJFS case worker Kimberly Gabel testified Mother had not completed her case plan, had not reduced the risk posed to her children, and that the children had been in SCJFS temporary custody for 12 or more months in a 22-month period.

{¶ 17} Gabel stated Mother provided drug screens positive for marijuana, cocaine, and alcohol and often refused to comply with drug screens. She further stated Mother had, while intoxicated, pointed a gun at someone at a gas station. According to Gabel Mother could not begin parenting classes until she achieved sobriety, which had not taken place. Moreover, Mother's housing had been unstable throughout the pendency of this matter and she refused to provide documentation for housing or of her income to obtain housing.

{¶ 18} Mother's parenting evaluation was conducted by Michael Stranathan. Stanathan testified Mother did not have sufficient knowledge of basic parenting skills, resisted assistance from professionals and was defensive. Stranathan diagnosed Mother with anti-social personality disorder as well as cannabis, cocaine/stimulant, and alcohol disorders. He recommended Mother engage in mental health services, substance abuse

counseling parenting classes and eventually joint counseling with the children. Stranahan did not recommend reunification with the children until Mother had completed these services.

{¶ 19} Commquest Administrative Supervisor Kim Fraley testified Mother completed a substance abuse assessment, was recommended for treatment, and completed that treatment. After completing treatment, however, Mother tested positive for cocaine and alcohol and was therefore asked to submit to drug testing at least twice a week. Mother agreed, but then did not submit to further drug screens and was terminated from Commquest.

{¶ 20} Summit Psychological Associates counselor Star Jones testified Mother completed her assessment in April 2019, and was initially compliant with treatment. Over time however, mother decreased her attendance and stopped appearing at all in August 2019. Jones stated throughout what counseling mother did engage in, she failed to take any responsibility for the removal of her children from her home.

{¶ 21} Mother testified on her own behalf and admitted she had been inconsistent with counseling, had not complied with drug counseling, was not employed, had failed her most recent drug test, and had pled guilty to a fourth degree felony involving a firearm.

{¶ 22} Regarding the children, Gabel testified L.G. has behavioral and emotional issues, had killed multiple animals while in SCJFS custody and was physically aggressive with his peers. Gabel stated L.G. is in counseling and on medication. Gabel also indicated L.G. had missed a lot of school while in mother's custody, but now has an IEP and is improving at school. She stated L.G. is bonded with his foster family but still loves his parents.

{¶ 23} As for J.G., Gabel testified his cerebral palsy is severe and requires significant medical attention. Those needs are being met by his foster family. J.G. also has an IEP, has been able to transfer to a public school, and receives multiple therapies. He is doing well in foster care and is bonded with his foster family. The children were placed in separate foster homes after L.G. harmed animals and broke a foster sibling's collarbone.

{¶ 24} Gabel additionally testified relative placements for the children were explored, but none were appropriate. Gable stated permanent custody would be in the children's best interests. Mother testified and disagreed with this assessment.

{¶ 25} Minor, the children's GAL testified that although the children are bonded with Mother, due to her non-compliance with the case plan, continued drug use, mental health issues, and criminal behavior, granting permanent custody to SCJFS was in the children's best interests.

{¶ 26} After taking the matter under advisement, the trial court issued findings of fact granting permanent custody of the children to SCJFS and terminated parental rights. The court found despite reasonable efforts by SCJFS the children could not be placed with mother within a reasonable time, should not be placed with mother, and had been in the temporary custody of SCJFS for twelve or more months in a consecutive twenty-two-month period.

{¶ 27} Mother filed an appeal and the matter is now before this court for consideration. She raises two assignments of error for our consideration as follow:

I

{¶ 28} "THE TRIAL COURT'S JUDGMENT THAT J.G. AND L.G. CANNOT BE PLACED WITH APPELLANT WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

II

{¶ 29} "THE TRIAL COURT'S JUDGMENT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶ 30} We address Mother's assignments of error together. In her first assignment of error, Mother argues the trial court's finding that the children could not be placed with her within a reasonable period was against the manifest weight and sufficiency of the evidence. Within the same assignment of error, Mother also argues the trial court erred in finding SCJFS made diligent efforts to prevent removal of the children. In her second assignment of error, Mother argues the trial court's finding that an award of permanent custody to SCJFS is in the children's best interest is against the manifest weight and sufficiency of the evidence. We disagree.

{¶ 31} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (February 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578

(1978). On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, 1997-Ohio-52; *Eastley v. Volkman*, 132 Ohio St.3d 328, 972 N.E.2d 517, 2012-Ohio-2179. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21

### Permanent Custody

{¶ 32} R.C. 2151.414(B)(1) states permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 2151.414, that it is in the best interest of the child and any of the following apply:

> (a) The child is not abandoned or orphaned* * *and the child cannot
> be placed with either of the child's parents within a reasonable time
> or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who
> are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period* *

*

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 33} Therefore, R.C. 2151.414(B) provides a two-pronged analysis the trial court is required to apply when ruling on a motion for permanent custody. In practice, the trial court will determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶ 34} R.C. 2151.414(D) governs "best interests" and states the following:

(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home

providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 35} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 36} Here, R.C. 2151.414(B)(1)(d) applies as the children had been in the temporary custody of SCJFS in excess of twelve or more months of the consecutive twenty-two month period and mother does not dispute this fact. This court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. *In the Matter of A.S., V.S., and Z.S.*, 5th Dist. Delaware No. 13 CAF 050040, 2013-Ohio-4018. Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence.

{¶ 37} Even so, mother faults SCJFS for failing to make reasonable efforts by extending case plan services for an additional six months. Pursuant to R.C. 2151.419, the agency which removed the child from the home must have made reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the home, or make it possible for the child to return home safely. The statute assigns the burden of proof to the agency to demonstrate it has made reasonable efforts.

{¶ 38} But R.C. 2151.419 is generally not applicable to permanent custody proceedings. In *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, 2007-Ohio-1104 at paragraph 41, the Supreme Court of Ohio stated:

> By its terms, R.C. 2151.419 applies only at hearings held pursuant to R.C. 2151.28, 2151.31(E), 2151.314, 2151.33, or 2151.353. See R.C. 2151.419(A)(1). These sections involve adjudicatory, emergency, detention, and temporary-disposition hearings, and

dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state. The statute makes no reference to a hearing on a motion for permanent custody. Therefore, "[b]y its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414." *In re A.C., supra*, 2004-Ohio-5531, 2004 WL 2340127, ¶ 30.

{¶ 39}  We nonetheless find SCJFS did make reasonable efforts.

{¶ 40} SCJFS developed a comprehensive reunification plan to assist mother in remedying the issues which caused her children to be removed from her custody. As outlined in our statement of facts, Mother's case plan required her to engage in mental health and substance abuse treatment, obtain sobriety, attend medical appointments and engage in services for the children, and attend Goodwill parenting classes after obtaining sobriety. All these services were offered to Mother yet she failed to adequately engage in those services. Mother did complete a substance abuse evaluation and treatment, but after completing treatment she tested positive for cocaine and alcohol. Mother was therefore asked to submit to drug testing at least twice a week. Mother agreed, but then did not submit to further drug screens and was terminated from Commquest. She continued to abuse substances, testing positive for drugs as late as July 2020, and engaged in criminal behavior while intoxicated. While Mother was provided with resources

to address her mental health issues, she resisted assistance from professionals and was highly defensive. Mother also had no stable housing or employment.

{¶ 41} Although the trial court was not required to make a reasonable efforts determination, based upon our review of the record, we find substantial evidence to establish SCJFS used reasonable efforts to reunify the family, but Mother made no significant progress toward alleviating SCJFS's core concerns for the children.

{¶ 42} So too, we find no error in the trial court's finding that the best interests of the children would be served by granting permanent custody to SCJFS.

{¶ 43} Mother argues that she has a bond with the children and they with her and thus severing their relationship through a grant of permanent custody is not in the children's best interests. But as discussed above, Mother does not dispute the children have been in the custody of SCJFS in excess of twelve months of a consecutive twenty-two-month period. As pointed out by appellee, the record indicates Mother failed to make progress on her case plan after 19 months. We agree. Mother's lifestyle did not change during that time and she remains ill equipped to parent two special needs children.

{¶ 44} We therefore agree with the trial court – the benefit of permanency and stability for the children outweigh any harm caused by severing the parental bond. We further conclude the findings of the court are supported by clear and convincing evidence.

{¶ 45} Mother's two assignments of error are overruled.

{¶ 46} The judgment of the Stark County Court of Common Pleas Juvenile Division is affirmed.

By Wise, Earle, J.

Baldwin, P.J. and

Delaney, J. concur.

EEW/rw