[Cite as *In re O.G.*, 2023-Ohio-4483.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. Patricia A. Delaney, J. |
| IN RE O.G. | : |  |
|  | : | Case No. 2023 CA 00102 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Juvenile Division, Case No. 2021JCV00973

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      December 8, 2023

APPEARANCES:

For Mother-Appellant:

KATHLEEN S. O'BRIEN
116 Cleveland Ave. NW
Suite 303
Canton, OH 44702

For SCDJFS-Appellee:

JAMES B. PHILLIPS
300 Market Ave. N.
Canton, OH 44702

*Delaney, J.*

{¶1} Mother-Appellant appeals the August 18, 2023 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, granting permanent custody of the minor child, O.G. to Appellee, Stark County Department of Job and Family Services.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Mother-Appellant R.A.C. is the biological mother of O.G., born in January 2020. The alleged biological father of O.G. is G.G. Mother and G.G. are not married. Mother is also the parent of A.C., born in August 2013. A.C.'s biological father is J.C.O.

{¶3} In June 2021, Mother and children came to the attention of Appellee Stark County Department of Job and Family Services ("SCDJFS") due to the deplorable sanitary and structural conditions of Mother's home. In July 2021, the children were removed from the home to allow Mother an opportunity to clean the home. The home was sufficiently cleaned to allow the children to return to the home, but in August 2021, SCDJFS observed that the home had returned to the earlier unsanitary conditions. A.C. alleged that Mother did not come out of her room and there were concerns that J.C.O. was using drugs.

{¶4} On September 28, 2021, SCDJFS filed a complaint alleging dependency and/or neglect of O.G. and A.C. by Mother, G.G., and J.C.O. An emergency shelter care hearing was held where the juvenile court found probable cause for SCDJFS involvement and that SCDJFS made reasonable efforts to prevent the need for the removal of the children from the home. The juvenile court awarded emergency temporary custody of O.G. and A.C. to SCDJFS. The children were placed in the same certified foster home. Mother did not provide any familial placement suggestions at the time of removal.

{¶5}   The juvenile court appointed a Guardian ad Litem for the children.

{¶6} The juvenile court held a dependency hearing on November 10, 2021. SCDJFS dismissed the allegations of neglect; thereafter, Mother stipulated to the finding of dependency. J.C.O. also stipulated to dependency. G.G.'s whereabouts were unknown. The juvenile court held a dispositional hearing the same day where O.G. and A.C. were placed in the temporary custody of SCDJFS. A.C. had been moved to a different foster home because she was engaging in sexualized behavior. The juvenile court found that SCDJFS had made reasonable efforts for permanency.

{¶7} The juvenile court held an administrative review hearing on March 24, 2022, where Mother's case plan was approved and adopted. Mother had provided one urine sample that was inconclusive. Her home conditions remained deplorable, resulting in a health violation order. Mother said she had a psychiatrist but did not provide any information. Mother had visitation with the children, but she had to be reminded to not engage the children in adult topics.

{¶8} On April 13, 2022, SCDJFS moved to dismiss J.C.O. as a party in O.G.'s case because testing determined he was not O.G.'s biological father. The juvenile court granted the motion.

{¶9} The juvenile court conducted an administrative review on August 25, 2022. The judgment entry stated that Mother had not done her substance abuse and mental health assessments. Mother had pending criminal drug charges. SCDJFS moved to extend temporary custody. On October 17, 2022, the juvenile court granted the motion to extend temporary custody to March 28, 2023 based on the parties' agreement.

{¶10} The matter came on for an administrative review hearing on February 23, 2023 with judgment entry filed on February 28, 2023. A.C., O.G.'s sibling, had been placed with her paternal aunt and uncle. O.G. remained in foster care because there was no familial placement available. The foster home was interested in adopting O.G. Mother had recently plead guilty to aggravated possession of drugs. She had tested positive for cocaine and methamphetamine. Mother did not have any housing or stable employment.

{¶11} On February 24, 2023, SCDJFS filed a motion for permanent custody of O.G.

{¶12} After the appointment of new counsel for Mother, the evidentiary hearing was held on July 20, 2023. The following evidence was adduced at the hearing.

{¶13} The SCDJFS ongoing case worker assigned to O.G.'s case testified first. She said that since the filing of the case on September 28, 2021, O.G. has not been outside of SCDJFS custody. O.G. has been in the custody of SCDJFS for more than 12 of the last 22 months. The juvenile court held regular review hearings where it found SCDJFS made reasonable efforts for permanency planning and placement of O.G.

{¶14} The alleged father of O.G. is G.G. Paternity had not been proven for G.G. and Mother had not named anyone else who could be the biological father of O.G. Case plan services were established for G.G. but he did not complete any services. G.G. had not visited O.G. within the last 90 days. There was a possibility that G.G. had been deported.

{¶15} The ongoing caseworker testified to Mother's case plan. Mother was to address her mental health and substance abuse concerns. Mother had completed substance abuse assessments at Commquest and mental health assessments at

Coleman, but she did not engage in further services. She was released from Commquest due to noncompliance. On June 6, 2023 and July 11, 2023, Mother submitted to random drug testing after visitation with O.G. She tested positive for cocaine and methamphetamine. Mother was currently on probation for substance charges and theft charges, but she had not provided the caseworker with a release to contact her probation officer. Mother was scheduled for a psych appointment, but she was on a waiting list for counseling. Mother told the caseworker she was attending counseling at the University of Akron, but she did not provide the caseworker with any information for confirmation.

{¶16} Mother was also required to obtain stable housing. The ongoing caseworker knew Mother was staying in a home that did not have plumbing and had no information about a lease. The caseworker talked to Mother about contacting the homeless hotline and registering for a shelter to secure income-based housing, but Mother was resistant. Mother went to a domestic violence shelter in May 2023 and was discharged from the shelter when she was not compliant with its curfew. Mother was required to gain employment to support O.G.'s basic needs, but the ongoing caseworker had no information as to employment.

{¶17} Next, Mother testified at the hearing. Mother testified that since May 2023, she had a residence in Canton, Ohio. She paid a down payment and was responsible for paying off the tax lien owed on the house, then the owner would put the home into her name. The home did not have plumbing, which Mother testified she was installing herself. Mother was also self-employed through her LLC named Chains and Charms, set up in 2018. She sold jewelry, did housekeeping and maintenance work. She also worked with

Amstead Maintenance on a regular basis. Mother approximated she earned at least $500 per week.

{¶18} Mother testified that she completed her mental health case plan requirement. She went to University Healthcare by the Akron University Hospital for mental health treatment. Mother said in 2021, she completed an assessment and went through the six-month program. Mother also completed two assessments with Commquest in 2022 and 2023. In May and June 2023, she went to Coleman after a referral while she was in jail for not completing her community service and violating her probation. She testified that she was currently on probation and had been drug tested through probation since December 2022. She admitted that she relapsed in July 2023. She was attending drug treatment through ISP. Mother said she did not do drug testing with SCDJFS because she did not have private transportation. She did not have time to take public transportation, comply with probation and SCDJFS, and maintain full time employment.

{¶19} Before she met G.G., Mother said she had full-time employment in medical assisting. She met G.G. in 2018 and he destroyed it all. When the children were placed in the custody of SCDJFS, she developed depression, which prevented her from completing her case plan. She believed her substance abuse issues resulted from the removal of her children. Mother requested an extension of temporary custody until September.

{¶20} At the time of the hearing, O.G. was three years old. O.G. did not have any medical or cognitive issues. O.G. had been in the same foster home since September 28,

2021. He was extremely bonded with the foster parents, calling them "mom" and "dad." The foster parents were interested in adopting O.G.

{¶21} Mother had two-hour biweekly supervised visits with O.G. The caseworker testified that Mother and O.G. were bonded and visitations went well. O.G.'s grandfather and A.C. attended visitations sometimes. Mother also had two adult children.

{¶22} The GAL recommended that O.G. be placed in the permanent custody of SCDJFS.

{¶23} The juvenile court issued its findings of fact and conclusions of law on August 18, 2023. The juvenile court first found that G.G. had abandoned O.G. The juvenile court next found that O.G. had been in the temporary custody of SCDJFS since September 28, 2021. Following placement of the child outside of the home and notwithstanding the reasonable case planning and diligent efforts of SCDJFS, Mother failed to remedy the conditions that caused the child to be placed outside of the home. O.G. could not be placed with Mother within a reasonable time. It was further in the best interest of O.G. to be placed in the permanent custody of SCDJFS.

{¶24} The juvenile court issued its judgment entry terminating G.G. and Mother's parental rights to O.G. on August 18, 2023. It is from this judgment that Mother now appeals.

## ASSIGNMENTS OF ERROR

{¶25} Mother raises two Assignments of Error:

I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY
TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY
SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND

CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY OF MINOR CHILD AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY OF MINOR CHILD AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**ANALYSIS**

{¶26} Mother contends in her first and second Assignments of Error that the juvenile court erred in terminating her parental rights to O.G. and awarding SCDJFS permanent custody of the child. We disagree.

{¶27} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree

of proof." Id. at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶28} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶29} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court to schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶30} Pursuant to R.C. 2151.414(B)(1), the trial court may grant permanent custody of a child to a movant if the court determines at the hearing, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more

public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state. * * * *.

{¶31} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶32} R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (e) is present before proceeding to a determination regarding the best interest of the child. Pursuant to R.C. 2151.414(D)(1), in determining the best interest of a child in a permanent custody proceeding, the court shall consider all relevant factors.

**I.**

{¶33} In her first Assignment of Error, Mother argues the juvenile court erred in granting permanent custody of O.G. to SCDJFS. She contends the juvenile court should permit her more time to complete her case plan.

{¶34} In the instant case, R.C. 2151.414(B)(1)(d) applies to O.G., to wit: he was in the temporary custody of SCDJFS for twelve or more months of a consecutive twenty-two-month period. SCDJFS received temporary custody of O.G. on September 28, 2021.

{¶35} This Court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. *In re D.H.*, 5th Dist. Licking No. 2022 CA 00025,

2022-Ohio-4495, ¶ 59 citing *Matter of O.M.*, 5th Dist. Coshocton No. 20CA0017, 2021-Ohio-1310, 2021 WL 1424200, ¶ 33 citing *In the Matter of A.S., V.S., and Z.S.*, 5th Dist. Delaware No. 13 CAF 050040, 2013-Ohio-4018. Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence. *Matter of L.G.*, 5th Dist. Stark No. 2020-CA-00139, 2021-Ohio-743, ¶ 36.

{¶36} The juvenile court, however, determined that O.G. could not be placed with Mother within a reasonable time or should not be placed with Mother. The record in this case supports the juvenile court's conclusion that despite the reasonable case planning and diligent efforts by SCDJFS to assist Mother to remedy the conditions that initially caused O.G. to be placed outside the of the home, Mother has consistently failed to substantially remedy the conditions. Mother testified that she had completed her case plan goals; however, the evidence shows that she did not cooperate or communicate with the caseworker to document her compliance with her case plan goals, resulting in contradictory testimony between the caseworker and Mother.

{¶37} Mother testified that she had completed her substance abuse treatment and drug testing through her probation. The caseworker asked Mother for a release so that she could contact the probation officer to confirm her compliance, which Mother did not provide. Mother admitted that she tested positive for cocaine and methamphetamine use during the pendency of the case. Mother testified that she completed her mental health goals with a facility in Akron. The caseworker asked Mother for records to confirm her completion, which Mother did not provide. Mother testified that she was employed but did not provide the caseworker with documentation of her employment or proof of income. Mother testified that she had owned a home but did not provide any lease agreement or

ownership documentation of the home. The home did not have any working plumbing at the time of the hearing.

{¶38} In this case, Mother and the caseworker gave contradictory testimony as to Mother's completion of her case plan. The juvenile court found the caseworker's testimony to be more credible than Mother's. Upon this record, we find the juvenile court's determination that Mother had not completed her case plan and could not be reunified with O.G. within a reasonable amount of time was supported by clear and convincing evidence.

{¶39} Mother's first Assignment of Error is overruled.

**II.**

{¶40} Mother contends in her second Assignment of Error that the juvenile court abused its discretion when it awarded permanent custody of the child to SCDJFS because the clear and convincing evidence did not support it was in the child's best interest. We disagree.

{¶41} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D)(1) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved

without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶42} A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re E.H.*, 5th Dist. Stark No. 2022CA00007, 2022-Ohio-1682, 2022 WL 1579856, ¶ 101 quoting *In re Mauzy Children*, 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal*, 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994). In this case, we find there was competent, credible evidence to support the juvenile court's decision that it was in the best interest of the O.G. to be placed in the permanent custody of SCDJFS.

{¶43} O.G. was born in January 2020 and placed in the temporary custody of SCDJFS in September 2021. At the time of the hearing in 2023, he was three years old.

{¶44} O.G. had been in the same foster-to-adopt home since his placement in September 2021. He was bonded with his foster family. He was healthy and had no cognitive or mental health challenges requiring exceptional care.

{¶45} Mother was bonded with O.G. and did well during her supervised visitation. Mother, however, had not progressed beyond supervised visitation during the pendency of the case due to her failure to progress in her case plan.

{¶46} The juvenile court found that any detriment that could occur by severing any bond between Mother and O.G. would be outweighed by the benefits of permanency for this child. We agree.

{¶47} Mother's second Assignment of Error is overruled.

## CONCLUSION

{¶48} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.