[Cite as *In re A.N.*, 2024-Ohio-589.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. W. Scott Gwin, P.J.<br>Hon. John W. Wise, J. |
| A.N. | Hon. Andrew J. King, J. |
| MINOR CHILD | Case No. 2023 CA 00157 |
|  | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Juvenile Division, Case No. 2021 JCV 01187 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | February 14, 2024 |

APPEARANCES:

| For Appellant Father | For SCDJFS |
|---|---|
| BRIANNA R. BROTHAG<br>201 Cleveland Avenue, SW<br>Suite 104<br>Canton, Ohio 44702 | QUAY COMPTON<br>221 3rd Street SE<br>Canton, Ohio 44702 |

*Wise, J.*

{¶1} Father appeals the November 3, 2023 judgment entry, of the Stark County Court of Common Pleas, Family Court Division, awarding permanent custody of A.N. to the Stark County Department of Job and Family Services (SCDJFS/Agency). For the reasons that follow, we affirm the decision of the Family Court.

## FACTS AND PROCEDURAL HISTORY

{¶2} The child, A.N., was born on March 16, 2011. Her biological mother, C.N. is not involved in this appeal because she relinquished permanent custody of the child to SCDJFS. Father-Appellant is the biological father of A.N. and the sole Appellant in this appeal.

{¶3} When appellant-father dropped A.N. off at a friend's house without any belongings and didn't timely return to pick her up, SCDJFS filed a complaint [2021 JCV00900] alleging dependency, neglect and/or abuse with the Stark County Family Court. An emergency shelter care hearing was held and temporary custody of A.N. was awarded to the Agency. Judgment Entry, September 21, 2021.

{¶4} A.N. was placed in a foster home where she was still residing at the time of the permanent custody hearing.

{¶5} On December 3, 2021, the case was dismissed due to statutory time constraints, and the Agency refiled its complaint again alleging dependency, neglect and/or abuse. Another emergency shelter care hearing was held and the Agency was granted temporary custody of A.N, Case No. 2021 JCV01187, February 16, 2022.

{¶6} The trial court adopted the initial case plans for the mother and father developed by the Agency. Because A.N. alleged some inappropriate sexual contact by

father, part of the Agency's case plan for father required a sex perpetrator assessment at Melymbrosia.  The father's case plan concentrated on three areas: the completion of a sex offender risk assessment and treatment options if available; participation in his daughter's treatment, and engaging in his own mental health treatment.   Because   of the concerns of inappropriate sexual contact, father was granted limited visitation with A.N., and a no-contact order was put in place.   However, later father was granted telephone visitation with A.N. during the times she was in therapy, but failed to communicate with A.N. during this time.

{¶7}   The Agency continued with temporary custody of A.N. during five reviews by the Family Court on March 4, 2022, August 5 2022, August 19, 2022, February 3, 2023, and August 1, 2023.  Meanwhile, the Agency continued with efforts to facilitate a reunification plan with the parents.

{¶8}   Following a determination by the Agency that neither parent successfully completed the case plan, no suitable and willing kinship caregivers were identified, and that A.N. had been in its temporary custody since September, 2021, SCDJFS determined that permanent custody to the Agency was in A.N.'s best interests.

{¶9}   On August 6, 2023, SCDJFS filed a motion seeking permanent custody of A.N.

{¶10} On October 6, 2023, the Guardian ad Litem (GAL) filed a final report recommending that permanent custody be granted to the Agency.

{¶11} The motion for permanent custody came on for hearing on November 2, 2023.

{¶12} Present at the hearing were both biological parents accompanied by their attorneys. Mother stipulated to permanent custody to SCDJFS. The trial court, after determining that the mother's stipulation was voluntary and knowing, entered it into the record as Findings of Fact Nos. 8-13. The father requested an evidentiary hearing. The Agency presented evidence in two phases. First, on whether or not A.N. could be placed with either parent within the foreseeable future and second, whether it is in the best interests of A.N. for SCDJFS to be granted permanent custody.

{¶13} The caseworker testified on behalf of the Agency. She testified that father has not visited with A.N. since September, 2021. She testified that a no-contact order was originally enacted due to the sexual abuse allegations, but the order was later modified to allow father to have contact with A.N. if he participated in her therapy, but that father never even asked to contact A.N.

{¶14} The caseworker testified that father completed a sex offender risk assessment, and the evaluator recommended "extreme caution" in allowing him to have contact with any children and a long-term parenting program. The evaluator determined that father was not a good candidate for sex offender treatment due to his general dishonesty.

{¶15} The caseworker testified that while father did participate and attend some individual counseling sessions, he still lacked insight into the reasons surrounding the removal of A.N. and was unwilling to participate in some truth verification testing. Given that A.N. is cognitively delayed with several needs, father's behavior was of particular concern in that he could not take care of her special needs.

{¶16} With regard to A.N.'s best interests, the caseworker testified that A.N. is in a "purchased care home" and is diagnosed with an adjustment disorder due to some trauma that she experienced. She also has a diagnosis of chromosome abnormality and has cognitive delays. She is currently functioning at the level of a four-to six-year old.

{¶17} There are no known appropriate relatives to care for her and the father cannot provide A.N. with the structure and home environment that she needs. Indeed, in 2019, A.N. was in the custody of the Agency and subsequently returned to father but removed again by the Agency when father could not meet her needs.

{¶18} The caseworker testified that the Agency had extended its temporary custody of A.N. two times and that no further extensions remained.

{¶19} Father presented no evidence, and the court took the matter under advisement.

{¶20} On November 3, 2023, the trial court granted permanent custody of A.N. to SCDJFS and terminated the parents' parental rights and responsibilities. It entered its findings of fact and conclusions of law consisting of nine pages. Specifically the trial court found that, despite reasonable efforts by SCDJFS, A.N. could not and should not be placed with Father within a reasonable amount of time; that Father had failed to remedy the problems leading to A.N.'s removal, A.N. had been in the temporary custody of the Agency for a period greater than 12 of the past 22 months, and the grant of permanent custody was in A.N.'s best interests. Judgment Entry, Findings of Fact and Conclusions of Law, November 3, 2023.

{¶21} Father timely appealed arguing two assignments of error:

**{¶22}** I.    THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶23}** II.    THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**LAW AND ANALYSIS**

**I, II**

**{¶24}**  Because both assignments of error argue manifest weight of the evidence, they will be addressed together.

*Standard of Review*

**{¶25}**  On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case:  a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered.  *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist., 1983); *State v. Thompkins,* 78 Ohio St.3d 380, 387,

678 N.E.2d 541. Because the fact finder is in the best position to weigh the credibility of the witnesses and observe their demeanor, a reviewing court will always be mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179 972 N.E.2d 517, ¶ 21.

**{¶26}** An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C. E. Morris Co., v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

*R.C. 2151.414(B) Determinations by Trial Court*

**{¶27}** Pursuant to R.C. 2151.414(B), a trial court may grant permanent custody of a child to a movant if the court determines at the hearing, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that one of four circumstances apply. In practice, a trial court will usually determine whether one of the four circumstances outlined in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶28}** R.C. 2151.414(B) authorizes the court to grant permanent custody of the child to the public or private agency if the court determines by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the Agency and that any of the following apply: (a) The child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned, (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody, (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period.

**{¶29}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time, or should not be placed with the parents.

**{¶30}** Here, the trial court made findings pursuant to R.C. 2151.414(B)(1)(a) (Reasonable time) and R.C. 2151.414(B)(1)(d) (12 months in 22 months): "The Court finds by clear and convincing evidence the child has been in the custody of SCDJFS for a period greater than 12 of the last 22 months. No extensions of temporary custody are possible. Judgment Entry Nov. 3, 2023 No. 4. "The court finds by clear and convincing evidence that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent within a reasonable time.", Findings of Facts Nov. 3, 2023, No. 22.

**{¶31}** As long as one of these factors is present, then the first prong of the test is satisfied.

{¶32} Appellant argues that he substantially complied with his case plan, disputing the trial court's finding of reasonable time. R.C. 2151.414 (B)(1)(a). The undisputed record, however, belies that claim.  Appellant's case plan revolved around three goals – treatment because of sexual abuse allegations, participation with A.N. during therapy and treatment for his own mental health. The caseworker testified that, at best, Father completed a sex offender risk assessment. The evaluator recommended "extreme caution" in allowing him to interact with children and A.N. Because of his perceived "general dishonesty" he was not a good candidate for sex offender treatment.  Father did not attempt to comply with the case plan with regard to A.N.'s therapy. The caseworker testified that he was given authorization to call A.N. during her therapy, and he didn't even ask to contact her or participate in any way with her treatment.  So, too, Appellant made no effort to gain insight into his own mental health needs.

{¶33} While Appellant disputes the finding that A.N. cannot be placed with him within a reasonable time, he does not dispute the fact that A.N. was in the temporary custody of the Agency for over twelve months.  No court shall grant an agency more than two extension of temporary custody pursuant to R.C. 2151.415(D)(4).  A.N. was in the temporary custody of SCDJFS in excess of twelve months of a consecutive twenty-two-month period, R.C. 2151.414(B)(1)(d). This Court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody.  *In re. D.H.,* 5th Dist., Licking No. 2022 CA 00025, 2022-Ohio-4495, ¶ 59.  Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence. *Matter of L.G.,* 5th Dist., Stark No. 2020-CA-00139, 2021-Ohio-743, ¶ 36.

*Best Interest Determination by Trial Court*

{¶34} In determining the best interest of the child at the permanent custody hearing, the trial court must consider all relevant factors, including but not limited to the following:

{¶35} (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the guardian's ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R. C. 2151.414 apply in relation to the parents and child. R.C. 2151.414(D).

{¶36} We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact that court's determination will have on the lives of the parties concerned." *In re: E.H.,* 5th Dist., Stark No. 2022CA00007, 2022-Ohio-1682, ¶ 101 quoting *In re: Manzy Children,* 5th Dist., No. 2000CA00244, 2000 WL 170073 (Nov. 13, 2000) citing *In re: Awkal, 9*5 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist., 1994).

{¶37} Here, the trial court found that it is in A.N.'s best interests that SCDJFS be awarded permanent custody and thus eligible for a permanent adoptive home.

{¶38} We find there was competent, credible evidence to support the trial court's decision and it is not against the manifest weight of the evidence.

{¶39} The trial court heard the testimony of the case worker assigned to A.N. case and read the final report of the GAL. It found that A. N. was twelve years old at the time of the hearing and in the same foster home since September, 2021. A. N. has cognitive delays, an adjustment disorder due to trauma, and a chromosome abnormality. She is functioning at the ages of four to six. A.N. requires a lot of support and assistance, cries easily and is in need of a structured home and setting. Finding of Fact: Best Interests, Nos. 2-3. A. N. had no bond with Father. Finding of Fact: Best Interest, No. 7.

{¶40} The trial court further made a finding that a paternal aunt in Florida was considered for placement of A.N. but was rejected due to substance abuse concerns and that another relative was being explored.

{¶41} Father argues that SCDJFS did not meet its burden of proving that an award of permanent custody to the Agency is in A.N.'s best interest, again arguing that he substantially complied with the case plan by completing a sexual risk assessment and that he was never given an opportunity to visit A.N. outside of therapy sessions. However, the evidence demonstrates that any detriment which may occur by severing any bond is outweighed by the benefits of permanency for A.N.

{¶42} The clear and convincing evidence here supports the trial court's finding that A.N.'s best interests are served by awarding SCDJFS permanent custody thus making her eligible for a permanent adoptive home that can serve her special needs.

**CONCLUSION**

{¶43} This Court finds that the trial court carefully weighed the evidence and found by clear and convincing evidence that A.N. cannot be placed with either parent within a

reasonable time, A.N. has been in the custody of SCDJFS since September, 2021 and that permanent custody of A.N. to SCDJFS is in her best interests.

{¶44} Father-Appellant's Assignments of Error are overruled.

{¶45} The judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed.


By: Wise, J.

Gwin, P. J., and

King, J., concur.


JWW/kt 0209